Moch and another *v.* Virginia Fire & Marine Ins. Co.

*(Circuit Court, E. D. Virginia.* February, 1882.)

1. JURISDICTION—RES ADJUDICATA.

Where a court of general jurisdiction in another sovereignty has passed upon the question of its own jurisdiction, when expressly raised by plea and necessarily considered in giving judgment, the parties to such suit are bound in a home court under the principle of *res adjudicata.*

2. SAME—FOREIGN JUDGMENT—ESTOPPEL.

In such a suit against an insurance company in a home court on a judgment from a court of another sovereignty, though the court may look behind the judgment of the court *a quo* into the question of the jurisdiction of that court over the subject-matter or parties, and into the validity of the process by which suit there was commenced; yet this power does not, as of course, relieve parties to the suits from the operation of the principle of *res adjudicata.*

3. INSURANCE COMPANY—NON-RESIDENT—SERVICE OF PROCESS ON RESIDENT AGENT.

An insurance company, chartered and resident in one state, which does business in another state through an agent there, who receives risks, collects premiums, signs and delivers policies, and transacts the business usually done by the resident agent of a non-resident corporation, may be sued in that state, if its statute law does not forbid, by the service of process on that agent, whether he has express power of attorney to receive or accept such service or not.

4. SAME—STATE LAW AS TO NON-RESIDENT CORPORATIONS.

And this is especially so where a law of such state requires every non-resident insurance company to have at least one agent in the state empowered to receive service of process, and requires *every* agent who receives risks, or collects premiums, or transacts business for such company, to have a certificate of such warrant.

5. PRACTICE—PLEA TO JURISDICTION—DECISION ON, IS BINDING EVERYWHERE.

A peremptory exception, such as is used in the practice in Louisiana, which denies that a resident agent of a non-resident insurance corporation is such an agent as that service upon him of process for commencing a suit will bring the corporation into court, is equivalent to the common-law plea to the jurisdiction; and, although it alleges that the defendant corporation appears "alone to file it," it submits the question of jurisdiction to the court in such manner that judgment against the defendant, upon it there, by a court of general jurisdiction, binds the defendants everywhere.

This is an action brought upon a judgment for $3,000, with interest and costs, obtained by the plaintiff against the defendant in the district court of the parish of Caddo, Louisiana, on the twelfth of April, 1879. The judgment in Louisiana was obtained on a policy of fire insurance issued by the defendant to the plaintiff, through John W. Taber, its agent at Shreveport. Process there was issued on the seventeenth of January, 1879, against the defendant company, "through its agent, John W. Taber," and was served on Taber. The

policy of insurance sued upon there was signed by the chief officers of the company in Richmond, Virginia, and was countersigned by "Douglas West, general agent," and by "John W. Taber, agent." The petition (declaration) averred that the contract of insurance had been made through Taber, as agent of defendant. The term of the court at which the judgment in Louisiana was rendered, began on Monday, the seventh of April, 1879. On the next day, the 8th, there was an entry of "default." On the twelfth of April the defendant appeared, as shown in the following entry:

"Now comes the defendant by attorney, who appears alone to file this exception, and alleges that this court is without jurisdiction to try this suit: (1) Because the defendant has not been legally cited to answer the demand of the plaintiff. (2) Because the person upon whom citation is alleged to have been served is not now, and never was, such agent of the defendant as that service of citation upon him would bind the said defendant or bring it into court. Wherefore, the defendant prays that this suit be dismissed at plaintiff's cost.

"DUNCAN & MONCURE, Attorneys for Defendant."

On the same day, the twelfth of April, judgment was entered in the following terms:

"In this cause, by reason of the judgment by default regularly taken, and not having been set aside, and the plaintiffs having proven their demands, the law and the evidence being in favor of plaintiffs and against defendant, it is hereby ordered, adjudged, and decreed that the plaintiffs do have and recover of defendant the full sum of $3,000, with 5 per centum per annum thereon from judicial demand, January 15, 1879, and all costs. Done," etc.

There was no appeal to a higher court from this judgment, and it stands unreversed in the court in which it was rendered.

A statute of Louisiana, approved February 26, 1877, and still in force, provides in the first section as follows:

"1. Be it enacted, etc., that no insurance company organized under the laws of any other state or any foreign government, shall, directly or indirectly, take risks or transact any business through an agent in this state until such insurance company shall have filed in the office of the secretary of state a certified copy of the vote or resolution of the trustees or directors of said company appointing such agent to transact business and take risks, accompanied by a warrant of appointment under the official seal of the company, and signed by the president and secretary. Such warrant shall continue valid and irrevocable until another agent shall be substituted, so that at all times, while any liability remains outstanding, there shall be within this state an agent or attorney aforesaid; and such warrant shall not be valid unless it contains a consent expressed that service of legal process, original, mesne, or final, on such agent shall be taken and held as valid as if served on the company, and

that acknowledgment of service of such process by him, for or on behalf of such company, shall be obligatory on it, and that judgment recovered on such service or acknowledgment shall be conclusive evidence of the indebtedness of the company.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"4. Be it further enacted, that any person who shall, after the first day of April, 1877, act as agent of any insurance company not incorporated by the laws of this state, in taking any risks, or transacting any business, or receiving any premiums on policies issued or to be issued, without an appointment made and filed in accordance with the provisions of this act, shall be deemed guilty of a misdemeanor, and punished with fine and imprisonment, or both, at the discretion of the court."

Upon the judgment in Louisiana, thus described, suit was brought in this court, the defendant company having its principal office and officers in Richmond.

The defendant pleaded in substance:

(1) That it had complied fully with the law of Louisiana, requiring, among other things, of non-resident insurance companies the appointment of a *general* agent, authorized to receive and acknowledge service of process.

After setting out in detail the provisions of the law, and averring a compliance with them by the defendant, the plea avers that the *general* agent appointed by it was one Douglas West, and that no other person had authority to accept or receive service of process in its behalf.

The defendant furthermore pleaded in substance:

(2) That the said John W. Taber, mentioned in the record as having been served with process in the suit in Louisiana, and alleged to be defendant's agent, was not its agent, and had not been appointed by it for such purpose, and had no authority nor power to receive service of said process in behalf of the defendant, and that notice to the defendant through said Taber as its agent was illegal and futile, and without its authority.

To these pleas the plaintiff replied in substance:

(1) That the defendant ought not to be admitted to plead the said plea because the record of the suit in Louisiana shows that citation to answer the plaintiff's demand having been duly served on an agent of the defendant, pursuant to the laws of Louisiana, and the defendant having appeared, as shown by the record, did then and there plead that it had not been legally cited, and that the person upon whom process was served was not such an agent of defendant as that such service of process would bind the defendant to bring it into court, which said matters and things were the same as are now pleaded here; and that thereupon the court in Louisiana adjudged that the defendant had been legally cited, and that the person upon whom process was served

was such an agent as that such service of process would bind said defendant to bring it into court; and so, that the defendant is bound and concluded by said judgment, and estopped by said judgment to plead here anew the matters and things passed upon and determined there.

The plaintiff furthermore replies:

(2) That the defendant is estopped from pleading that John W. Taber was its agent, that plea having been pleaded in the suit in Louisiana and determined against it.

To this replication the plaintiff demurred.

*Legh R. Page* and *Frank W. Christian,* for plaintiff.

*Wm. W. & Beverly T. Crump,* for defendant.

HUGHES, D. J. This case is before me now on the defendant's demurrer to the plaintiff's replication. Avoiding technicalities, the plaintiff's contention is that the defendant was properly sued and brought into court in Louisiana by service of process upon such an agent of the defendant, John W. Taber, as could be served with the process under the laws of that state; that, besides, the defendant appeared to the suit there, pleaded defective service of process, claimed that it was not in court, and was overruled on that issue thus raised by itself, by a court of general and competent jurisdiction, and is therefore estopped from pleading the same matters here.

The contention of the defendant, technically alleged by its plea and set out argumentatively in the very able and learned brief of counsel, is that the citation served on Taber was insufficient to bring it into court; that its appearance there was only for the purpose of suggesting to the court its want of jurisdiction because of the matters alleged in its "exception" filed there; that it is not bound by the judgment of the court on that or any other question; and that the judgment is a nullity, and would be treated as such in Louisiana, and should be so treated here.

The first question presented to me, though it is not the pivotal one in this case, is whether the "exception," the "peremptory exception," used in the practice of Louisiana, is to be treated in common-law courts as a plea by which the defendant sets out matters of law and fact in defence of the action, and submits himself to the judgment of the court upon them, or is a mere suggestion or protest of record by which the defendant commits himself to nothing at all; as to which it matters not at all to him whether the court considers and passes upon it or not, and which, when entered of record, is a matter of futile surplusage.

Without meaning to refer to such "exceptions" in general, I have to say that, for reasons given in the sequel, I cannot take the latter view of the peremptory "exception" which was pleaded in the suit between these parties in Louisiana, the judgment in which is sued upon here. The Code of Practice in Louisiana defines peremptory exceptions to be "those which tend to the dismissal of the suit;" some of them relating to forms, others arising from the law. The exception in this case tended to the dismissal of the suit on the ground that, as a matter of law, the defendant could not be brought into court by service of process upon the agent who, as the petition alleged and the exception did not deny, negotiated the insurance, received the premiums, delivered the policy, and was the acting agent of the defendant in the city of Shreveport; could not, for the reason that he was not what the plea calls the "general" agent of the company in Louisiana, appointed in accordance with the law concerning non-resident insurance companies enacted in 1877.

I consider that such was the matter of law formally submitted for decision on the twelfth of April, 1879, by defendant's counsel in the exception set out in the record; and though the court, in its judgment rendered on that day, probably after argument on the exception, does not expressly declare that the exception was formally overruled, yet that it was overruled is a necessary implication from the tenor of the judgment.

The court of Louisiana having decided that the defendant was before it by force of the service of citation on its agent, Taber, and not merely by its appearance "alone to file" the exception, it may not be competent for me to pass upon the propriety of that decision; but I feel bound by the earnestness of defendant's contention to look behind the judgment of the court *a quo*, into the validity of the process by which the defendant was held to have been brought into court.

That a corporation doing business in a state other than that from which its charter is derived, and in which its principal office is held and its chief business is conducted,—doing business there and everywhere else, as corporations must of necesity do, through the agency of natural persons,—may be sued and brought into court in that state by the service of process on its agent there, independently of any statute law or warrant of attorney expressly authorizing such service, has been very authoritatively decided.

The case of *Moulin* v. *Ins. Co.* 1 Dutcher, 57, was similar to the one at bar in its essential features, except that there, there was no

conditional appearance in the original suit by the defendant. The defendant was a corporation chartered in New Jersey, and having its principal office there. It established a branch office in Buffalo, New York, and did business there for awhile, but finally withdrew that office. Suit was afterwards brought against it there, on one of the policies issued from that agency, and process was served on its president, who was a resident of New Jersey and was casually in Buffalo, not on the business of his company. On the judgment obtained in the New York suit thus commenced, suit was brought in New Jersey. The pleadings in this latter suit were substantially identical with those in this, except as to the conditional appearance. The opinion was delivered by Chief Justice Green, who said:

"If a corporation may sue within a foreign jurisdiction it should seem consistent with sound principle that it should also be liable to be sued within such jurisdiction. The difficulty is this: that process against a corporation at common law must be served upon its principal officer within the jurisdiction of that sovereignty by which it was created. The rule is founded upon the principle that the artificial, invisible, and intangible corporate body is exclusively the creature of the law; that it has no existence except by operation of law; and that, consequently, it has no existence without the limits of that sovereignity, and beyond the operation of those laws by which it was created and by whose power it exists. The rule rests upon a highly artificial reason, and, however technically just, is confined at this day, in its application, within exceedingly narrow limits. A corporation may own property, may transact business, may contract debts; it may bring suits, it may use its common seal, nay, it may be sued within a foreign jurisdiction, provided a voluntary appearance is entered to the action. It has, then, existence, vitality, efficiency, beyond the jurisdiction of the sovereignty which created it, provided it be voluntarily exercised. If it be said that all these acts are performed by its agents, as they may be in the case of a private individual, and that the corporation itself is not present, the answer is that a corporation acts nowhere except by its officers and agents. It has no tangible existence except through its officers. For all practical purposes its existence is as real, as vital, and efficient elsewhere as within the jurisdiction that created it. It may perform every act without the jurisdiction of the sovereignty which created it, that it may within it. Its existence anywhere and everywhere is but ideal. It has no actual personal identity and existence as a natural person has; no body which may exist in one place and be served with process, while its agents and officers are in another. Process can only be served upon the *officers* of a corporation within its own jurisdiction, not upon the corporation itself.

"Process cannot be served upon the officer of a corporation in a foreign jurisdiction, because he does not carry his official character and functions with him; and yet the officers and agents of corporations carry their official character and functions with them into foreign jurisdictions for the purpose of making contracts and transacting the business of the corporation. The seal

of a corporation, its distinguishing badge, at common law the only evidence of its contracts, may be taken by its officers and used within a foreign jurisdiction.

"Doubts were formerly entertained whether a corporation could make a contract or maintain an action out of its own jurisdiction. These questions have been long since settled, either by judicial construction or legislative enactment, in accordance with the reason of the thing and usage of the commercial world. Sound principle requires that while the *powers* of corporations are world-wide, while for all practical purposes they may exist and act everywhere, the technical rule of the common law, that they exist only within the jurisdiction of the sovereignty which created them, should be applied only within its strictest limits, and not be suffered to defeat the obvious claims of justice. * * *

"The question now before the court is not upon the validity of the common-law principle; to that we adhere. * * * The utmost that can be said is that [the service in the suit in New York] was a deviation from the technical rule of the common law. The defendants were not condemned unheard, and without an opportunity of making defence. The process was served precisely upon the officer, and in the mode that it would have been had the process been served in this state. The corporation, it is true, were drawn into the forum of a foreign sovereignty to litigate, but, having voluntarily entered that jurisdiction and transacted business there; having invoked the comity and the protection of the laws of that sovereignty for their benefit,—can they complain that the contracts there made are enforced within that sovereignty and in accordance with its laws? Does it involve the violation of any principle of natural justice, or that protection which is due to the citizens of our own state? If the corporation were carrying on its business within the state of New York at the time of the service of the process, this court has already intimated its opinion that the service would be valid. In 4 Zab. 234, Justice Elmer said: 'I think, under such circumstances, natural justice requires that corporations should be subject to the laws of the state whose comity they thus invoke. For the purpose of being sued, they ought to be regarded as voluntarily placing themselves in the situation of citizens of that state. And such, it seems, would be the rule, independently of any express statute authorizing the mode of serving process. Angell & Ames, Corp. § 402. The fact that the corporation had ceased to transact business, whatever technical difficulty it may seem to create, cannot alter the reason and justice of the proceeding.'"

The learned judge distinguishes, of course, between corporations and natural persons, and applies his reasoning only to the former. He treats the existence of the New York statute, authorizing the service of process on the officer of a non-resident corporation casually in that state, as not affecting the decision of the court of New Jersey in the case. See *Bushel* v. *Com. Ins. Co.* 15 Serg. & R. 176, and Angell & Ames, § 402.

The doctrine thus ably laid down by Chief Justice Green has been sanctioned by the congress of the United States, as to the District of

Columbia, by section 11 of chapter 64 of the acts 1867, (14 St. at Large, 404,) which provides that, in actions against foreign corporations brought in the district, all process may be served upon the agent of such corporation or person conducting its business in the district.

And in *Railroad Co.* v. *Harris*, 12 Wall. 65, Mr. Justice Swayne, speaking for the United States supreme court, said: A corporation "cannot migrate, but may exercise its authority in a foreign territory upon such conditions as may be prescribed by the law of the place. One of these conditions may be that it shall consent to be sued there. *If it do business there, it will be presumed to have consented, and will be bound accordingly.*" This language was cited with approbation and adopted as a correct exposition of the law by the same court in *Ry. Co.* v. *Whitten*, 13 Wall. 270, and in *Ex parte Schollenberg*, 96 U. S. 376.

The case of *Michael* v. *Ins. Co. of Nashville*, 10 La. Ann. 737, which was decided in 1855, (before the statute of 1877,) sustains the decision in *Moulin* v. *Ins. Co.*, rendered in the same year. In it the supreme court of Louisiana not only held that a non-resident corporation could be sued through its resident agent, but that this right could not be destroyed by a revocation of the powers of an agent previously to a suit. The policy sued upon in that case covered the year 1852. The property insured was burned in August of that year. Suit was brought on the fourteenth of October following, and citation served on W. A. Johnson, the agent through whom the policy was taken, in November, 1852. By its exception, the defendant pleaded that the "agency of said insurance company in New Orleans had been some time since withdrawn." In support of the exception a telegraphic dispatch was proved, dated at Nashville on the twenty-ninth of September, 1852, and received the same day, declaring that the company had withdrawn its agency from New Orleans, and directing that risks should be declined after the first of October ensuing. The court held that the service of process was valid and effective.

The case of *Wright* v. *Liverpool, L. & G. Ins. Co.* 30 La. Ann. 1186, is an authority only apparently contrary to this principle. It arose before the statute of 1877. It decided that a foreign corporation, represented by a general agent and local board of directors residing in New Orleans, could not be brought into court by a citation served on a local agent domiciled in one of the county towns of Louisiana, who was only authorized to receive applications for insurance and give binding receipts for the same, and who had not exercised or rep-

resented that he possessed any other authority. But in that case the corporation, by having a principal office, a general agent for all purposes, and a local board of directors in New Orleans, was practically domiciled there, and there was no hardship in requiring service of process to be made on its general agent. It was, besides, proved affirmatively that the agent in the interior had no other authority, and was known to have none other, than to take risks.

On the general principles so ably enforced by Chief Justice Green, I would not feel justified in treating as a nullity the judgment of the court of Louisiana virtually establishing the validity of the service of process on the business agent of a non-resident insurance company, issued to commence a suit founded on a transaction with that agent, even if there were no statute in Louisiana authorizing such service. But the statute of that state, passed in 1877, comes in aid of the general principle, and seems to have expressly rendered such an agent as Taber was, amenable to the process which was served on him. Though the last clause of the first section of that act seems to imply that some one agent of every non-resident insurance company shall be the person empowered to be served with and to accept service of process for the whole state, yet the act speaks nowhere of a "general" agent, as the defendant's plea does; and the first clause of section 1 and the whole tenor of section 4 unite in providing that every agent who does business for a non-resident insurance company in the state, either in taking risks, *or* receiving premiums, or transacting any business, shall first have been appointed and empowered respecting process, as provided in the first section. If so, then Taber must be presumed to have been so empowered, and the defendant would not be heard to deny that it has, in respect to him, complied with the requirements of the statute. For a corporation to seek to avoid its own contract by reason of a *misnomer* is reprehended by Lord Coke as a pernicious novelty, which "till this generation of late times was never read of in any of our books." *Sir Moyle Finch's Case,* 6 Rep. 65a. Surely a corporation's neglect to produce a certificate necessary to vindicate itself and its agent from crime, should not be allowed to exempt it from liability for that agent's acts.

There is abundant authority to show that a suit may be maintained upon a foreign judgment recovered in a country of which the defendant, even though a natural person, was a citizen or resident, according to the laws of that country, though process was never in fact served upon him at all; and that such a judgment will not be deemed void as repugnant to natural justice.

In *Douglas* v. *Forest,* 4 Bing. 686, the court of common pleas held that an action may be maintained in England, upon a Scotch judgment, recovered upon a debt contracted in Scotland by a native of that country, though the defendant was abroad when the cause of action accrued, though no process was served upon him, and though he never knew of the existence of the action. The laws of Scotland allowed such a suit as that in which the Scotch judgment was rendered.

In *Bank of Australia* v. *Nias,* 16 Ad. & Ell. 717, it appeared that the statute of a British colony authorized suits against members of a corporation individually for liabilities of the corporation collectively, in a manner unknown to the laws of England, and seemingly repugnant to natural justice. But in an action in England, brought on a foreign judgment against one corporator, founded on such a liability, it was held that a plea setting out such a fact is insufficient.

In *Becquet* v. *McCarthy's Ex'r,* 2 Barn. & Ad. 951, it appeared that the statute law of a British colony authorized that in suits against absent parties to contracts made in the colony, process might be served on the attorney general of the colony. In a suit in England upon a colonial judgment obtained after such service of process, it was held that such a law did not render void the judgment.

In *Godard* v. *Gray,* L. R. 6 Q. B. 139, decided in 1870, where the contract sued upon abroad was made in England, and the foreign judgment obtained upon it was rendered on a misconstruction of the contract; yet, in a suit in England upon this judgment, the court held that the facts could not be gone into. See, also, *Schibsby* v. *Westenholz,* L. R. 6 Q. B. 155.

The defendants in these several cases were held to be estopped by the judgments of courts of competent jurisdiction abroad.

The whole subject of foreign judgments *in personam,* in their relation to the question of estoppel, has been so fully discussed in Bigelow on Estoppel that I need not do more than refer to the many cases cited below and in that work. The author concludes his review of the subject by the remark that although parties to a foreign judgment are not ordinarily estopped to deny the jurisdiction of a foreign court, yet if, in any case, there had been an issue made in the foreign suit between the parties, on this particular point, (as was done in Louisiana between the parties to this suit,) and this issue was decided in favor

v.10,no.7—45

of the jurisdiction, the decision would probably bar a retrial of the same question in another forum between the same parties.

I admit that the law on the power of a court to inquire into the jurisdiction of a foreign court over parties defendant is very unsettled. This question and those of *res judicata* and estoppel have been considered or passed upon, severally or together, in 1 Kent, Comm. 261, 262, and notes; Story, Confl. Laws, § 608, references and note; 1 Rob. Pr. 219; 6 Rob. Pr. 437; 7 Rob. Pr. 109; 1 Smith, Lead. Cas. 1118–1146; 2 Smith, Lead Cas. 828; Judge Moncure's opinion in *Bowler* v. *Huston*, 30 Gratt. 266; note to *Shuman* v. *Stillman* (from 6 Wend. 447) in 15 Am. Dec. 378; note to *Pixley* v. *Winchell* (7 Cow. 366) in 17 Am. Dec. 525; note to *Messier* v. *Goddard* (7 Yeates, 533) in 1 Am. Dec. 325; *Benton* v. *Burgot*, 10 Serg. & R. at 241; *Rocco* v. *Hackett*, 2 Bosw. 579; *Imrie* v. *Castrique*, 8 Com. B. (N. S.) 405; S. C. in error, L. R. 4 H. of. L. 414.

The act of congress of May 26, 1790, c. 11, (1 St. at Large, p.122,) provides that the records and proceedings of the courts of the several states, properly authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from whence the said records are taken. It was passed in pursuance of section 1 of article 4 of the constitution of the United States. It not only provides that such records shall be received as *evidence*, but, if in the state where judgment was rendered, it was evidence of the highest nature, namely, *record evidence*. This act of congress in declaring it to be the highest evidence, declared the *effect* which the judgment was to have in all the courts of the United States. The principal federal authorities on this subject are *Mills* v. *Duryea*, 7 Cranch, 383–4; *Hampton* v. *McConnell*, 3 Wheat. 234; *Knowles* v. *Gas-light & Coke Co.* 19 Wall. 58; *Thompson* v. *Whitman*, 18 Wall. 457; *Hill* v. *Mendenhall*, 21 Wall. 453; *Lafayette Ins. Co.* v. *French*, 18 How. 404; *Williamson* v. *Berry*, 8 How. 496, 540; *Glass* v. *Sloop Betsey*, 3 Dal. 7; *Rose* v. *Himely*, 4 Cranch, 241; *Elliott* v. *Piersol*, 1 Pet. 328; *Schriver's Lessee* v. *Lynn*, 2 How. 59; *D'Arcy* v. *Ketchum*, 11 How. 165; *Webster* v. *Reid*, 11 How. 437; *Nations* v. *Johnson*, 24 How. 195; *Christmas* v. *Russell*, 5 Wall. 291, 305; *Pennoyer* v. *Neff*, 95 U. S. 714. And on the subject of service of process on a corporation chartered in another sovereignty, see *Railroad Co.* v. *Harris*, 12 Wall. 65; *Railroad Co.* v. *Whitton*, 13 Wall. 270; and *Ex parte Schollenberger*, 96 U. S. 369.

It does not follow, however, that even though a home court may inquire into the jurisdiction of the court of another sovereignty, therefore the parties to a litigation there are not bound in the home court by the principle of *res judicata*. The two questions are distinct and should not be confounded. Whether or not Taber was "such an agent of the defendant as that service of citation upon him would bind the defendant and bring it into court," was the precise question presented to the court in Louisiana, not only *in ipsissimis verbis* by the defendant's exception, but by the showing of the record; and was the only question open to debate; for the proofs were apparently conclusive on the merits. This question was not only decided by the Louisiana court, but I think rightly decided, the court holding properly that the corporation was before it as defendant to the action, as well as before it for the special purpose of pleading to the jurisdiction.

Now, it is not denied that the court whose judgment I am considering was one of general jurisdiction, and, as such, competent to pass upon the validity of process issued by its clerk to bring a defendant before it; and there is very high authority, both in Louisiana and Virginia, holding that when such a court passes upon a question within its competency, in a litigation between two parties, those parties are concluded in every other court but an appellate one on that question.

In the case of *Verneuil* v. *Harper*, 28 La. Ann. 893, there had been a proceeding by Feitel against *Verneuil* to revive a judgment obtained nine years before, to which an exception had been filed by Verneuil, denying his identity with the original defendant. After a hearing upon the proofs taken upon this issue, there had been judgment overruling the exception and reviving the original judgment. Upon this second judgment execution was issued and property about to be sold in satisfaction by Harper, the sheriff. Whereupon Verneuil filed a petition for an injunction, and got a rule to show cause why it should not be granted, to stay the sheriff's sale. The petition denied the identity of petitioner with the defendant in the original judgment; that is to say, set up the same defence in the last proceeding which had been made in the second. Feitel filed an exception in the nature of a plea of *res judicata*, which the court *a quo* sustained. The cause went up to the supreme court of Louisiana, which, in the opinion delivered, among other things, said:

"The question [of identity] was litigated at the instance of Verneuil himself; it was solemnly determined against his pretensions; and he took no appeal. * * * We are bound to assume that the decision was right. The presumption in such cases is in favor of the probity of witnesses and the intelligence of the judge. *Res judicata pro veritate accipitur*."

In the case of *Cox* v. *Thomas' Adm'x*, 9 Gratt. 323, Thomas had been a sheriff, and there was a motion in the circuit court of his county, by his administratrix, to recover from Cox, his deputy, and the sureties of Cox, the amount of a judgment which had been recovered against the administratrix for money which had been collected by the deputy on an execution issued out of the *county* court of that county. It appeared from the face of the judgment that the execution upon which the deputy had collected the money had issued from the county court on a judgment of the circuit court, although section 48, 1 Rev. Code of 1819, p. 542, required the creditor to move in the court whence the execution issued, and the record did not show jurisdiction in the circuit court by removal from the county court. The court of appeals held that removal must be presumed from the fact that the circuit court had given judgment. Judge Allen, in rendering the decision of the court of appeals of Virginia, said:

"If the jurisdiction of the circuit court extended over that class of cases, it was the province of the court to determine for itself whether the particular case was one within its jurisdiction. The circuit court is one of general jurisdiction. * * * The jurisdiction of the court to take cognizance of all controversies between individuals in proceedings at law need not (as in cases of limited and restricted jurisdiction) appear on the face of the proceedings. Where its jurisdiction is questioned, it must decide the question itself. Nor is it bound to set forth on the record the facts upon which its jurisdiction depends. Wherever the subject-matter is a controversy at law between individuals, the jurisdiction is presumed from the fact that it has pronounced the judgment; and the correctness of such judgment can be inquired into only by some appellate tribunal."

And then the learned judge, after showing that the circuit court had jurisdiction of the subject-matter involved, went on to say as to the parties:

"The judgment in this case must be considered as conclusive for another reason. Both parties appeared, and the defendant either submitted to the jurisdiction or it was decided against him. In such case, as President Tucker, in *Fisher* v. *Bassett* 9 Leigh, 119, observed, the question whether the general jurisdiction of the court over matters of that description embraced the particular case, having been decided by its judgment, can never be raised again except by proceedings in error."

If the court of general jurisdiction, in rendering a judgment, has passed expressly upon the jurisdictional facts and found them sufficient, the parties and their privies are estopped in collateral actions to litigate the matter again. *Sheldon* v. *Wright,* 5 N. Y. 497; *Dyckman* v. *New York,* Id. 434.

The courts of one state will not allow parties to show that a court of another state has made an erroneous decision upon issues between the same parties raised before and decided by it. *Nurie* v. *Castrique,* 8 Com. Bench, (N. S.) 405; and S. C. in error, L. R. 4 H. of L. 414. See, also, *Drury's Case,* 8 Coke, 141*b*; and *Tarlton* v. *Fisher,* Doug. 671.

These decisions are but examples, among many, to show that where a question, even a question of jurisdiction, has been once litigated between two parties by a court of general jurisdiction, it is to be treated as *res judicata* between the same parties in every other but an appellate forum; and that where, in a litigation between parties in such a court, the question of jurisdiction over parties must have been considered, another court will presume that the court *a quo* did consider it, and treat that question as *res judicata.*

No sound reason can be given why the principle should not apply in a domestic court against parties to a litigation in another sovereignty, before a court of general jurisdiction there. And, although the authorities show that the home court may look into the jurisdiction of the foreign court, both as to parties and subject-matter, yet they also show that the parties to the other litigation are bound by the principle of *res judicata* when they come into the domestic court.

While, therefore, this court is not precluded from looking behind the judgment of the court of Louisiana, and judging for itself of the validity of the process by which the defendant is claimed to have been brought into that court, yet that power of the *court,* which is established by the weight of the authorities, should not be confounded with the very distinct question, whether the *parties* to a litigation in a foreign court of general jurisdiction are not bound by its decree, on an issue raised between themselves, whether that issue be on the validity of process there, or on the merits.

Though the principle laid down by Judge Allen does not apply to the prejudice of the power of this court to look behind the Louisiana judgment, it does apply to the plea of the defendant. If the defendant had not appeared by counsel as it did, the simple question here would have been upon the validity of the process that was served there, and of the judgment by default that was rendered there. But, having ap-

peared in a court of general jurisdiction, and formally submitted to that court the question whether Taber was such an agent as that service of citation upon him would bring it into court, and that court having decided against it the issue thus raised by itself, I am bound to consider the defendant estopped by the Louisiana judgment from retrying that question here.

On the whole case, in conclusion, I concur in the view taken of it by plaintiff's counsel in Louisiana, expressed in the language quoted in the brief of plaintiff's counsel here:

"It appears to me that the appearance, called an exception, put at issue the agency of Taber. The plaintiff had broadly averred in her petition that Taber was the agent of the defendant; that her contract was made with Taber as the agent of the defendant; that she paid the premiums to him as agent of the defendant; and that the defendant had ratified and confirmed the contract made by Taber, by accepting and using the premiums paid. These facts alleged by the plaintiff were the material substance of her case; and the paper called an exception was nothing more than an answer and denial of these material facts alleged by the plaintiff. That issue was tried, and proof made, that Taber did make the contract, and no one else did, and the premiums did go to the defendant. It is true that no certificate was shown from the secretary of state, under the statute of 1877; but the defendant is always presumed to have complied with the law, and cannot be heard to say that he violated our laws by taking risks or transacting business so positively forbidden by law, in order to reap a reward or to avoid an obligation based upon his own wrong and turpitude."

The defendant's demurrer to the plaintiff's replication must be overruled.