J. W. COVINGTON et al. v. TOWN OF ROCKINGHAM.

*Corporation, Municipal—Taxation—Injunction—Assessment.*

1. The town of Rockingham is not authorized either by its charter (private laws 1872-'73, ch. 51), or by the General Statutes on the subject (The Code, vol. 2, ch. 62), to assess property for taxation. Towns and cities are required to base their levies upon the assessments made for State and county purposes.

2. A tax list made up by one who is not a member of the taxing body, but who acts under its direction and as its agent, is not thereby made invalid.

3. Remedy for errors in imposing taxes should be first sought by application to the taxing body, upon whom ample powers are conferred for this purpose. The Code, §3823.

4. The collection of proper revenues for the support of municipal corporations will never be interfered with by injunction for mere irregularities, particularly where the irregularities are the result of the negligence of the taxpayer.

5. It is a settled rule of law, that an injunction will not be granted to restrain the collection of a tax, a portion of which is legal and a portion illegal, until the applicant has paid that which is legal—(if it can· be separated and distinguished from the illegal) ; and the complaint must point out what part is valid and what invalid, so that the Court may discriminate between them.

(*R. R. Co.* v. *Wilmington*, 72 N. C., 73 ; *Kyle* v. *Fayetteville*, 75 N. C., 445 ; *London* v. *Wilmington*, 78 N. C., 109, cited and approved).

This was an application for an Injunction to forbid the collection of taxes in the town of Rockingham, heard by *MacRae, Judge,* and who found the following facts :

1. The town of Rockingham was incorporated by chapter 51 of ·the private acts of the General Assembly of 1872–'73, and its limits extended by chapter 83 of the private acts of 1873–'74, the latter act dated February 12th, 1874.

2. By section 10 of chapter 106 of the private acts of 1873–'74, ratified the 14th of February, 1874, an act to incorporate the Pee Dee Manufacturing Company in the county of Richmond, another municipal corporation is created, part of the same within the boundaries of Rockingham. That five commissioners were appointed under said section, but no election was ever held thereunder, nor any tax ever levied by said commissioners.

4. At a called meeting of the mayor and commissioners of Rockingham, on August 27th, 1884, W. S. Fowlkes, one of the commissioners, was "appointed to advertise and take the tax list for 1885 from November 1st to November 1st, 1885," and on August 30th, 1884, in a newspaper published in Rockingham, notice was given to all persons liable to list their polls and property before him, before the first day of November, 1884.

5. At a called meeting of said board on the 15th of November, 1884, an order was made, but the clerk being absent was not entered upon the minutes, but a memorandum thereof was kept by one of the commissioners, who was acting as clerk of the meeting; and on March 9th, 1885, at a called meeting of said board, the order was entered upon the minutes as of November 15th, 1885, as follows:

"It appearing to the board, that the minutes of the meeting held November 15th, 1884, were not recorded at the time said meeting was held, but taken on scrip, on motion, it is ordered that said minutes be, and they are hereby entered on the record. That a tax of three-tenths of one per cent. be collected on all real and personal property within the corporate limits of said town of Rockingham, and ninety cents on each taxable poll, for the year beginning the 5th of November, 1884, ending November 5th, 1885; that whereas, the holders or owners of the taxable property have failed to list their property, ordered that the clerk, W. S. Fowlkes, be and he is hereby instructed to proceed to take the list of the taxable property from the tax books of Richmond county."

9. No publication was made of any of said orders, except the ordinances of December 1st, 1884, which were printed in handbill form, and the "Notice to Tax Payers" published in the "Spirit of the South," a newspaper of said town, Dec. 13th, 1884, as follows:

"NOTICE TO TAX-PAYERS.

All persons residing within the corporate limits of the town of Rockingham, and subject to town tax, are hereby notified to go before the town clerk before the 20th inst., and render a sworn list of his or her taxable property, or they will be charged with double tax.

By order of the Board of Commissioners.

A. B. NICHOLSON, Mayor.

W. S. FOWLKES, Town Clerk."

10. No notice was given to the public of the time and place of the called meetings hereinbefore referred to, and the same were held at night, not in any place specially set apart and designated as the place of meeting of the board.

Few persons gave in their lists of taxables in pursuance of either of said notices, and the list taker copied from the State and county tax lists of 1884, the names and taxables he deemed subject to town tax, but left out a large amount of bank stock and factory stock, the property of residents and tax payers of Rockingham, which ought to have been placed upon the town tax list, but which said list taker supposed were not taxable in said town. He did not list the real estate and personal property situate within the limits of the village of Pee Dee, and which is also within the lines of the town of Rockingham.

And some changes in the valuation of real estate were made on account of improvements placed thereon since the last assessment.

12. the plaintiffs have not paid or tendered to the said constable and tax collector the same, which they admit to be due and owing by them as taxes for the year 1884–'85, but deny the validity of any of the tax so attempted to be levied and collected.

Upon the foregoing facts, it was adjudged that the injunction be refused. From which the plaintiffs appealed to the Supreme Court.

*Mr. John D. Shaw*, for the plaintiffs.
*Mr. F. McNeill*, for the defendant.

MERRIMON, J. The defendant is a municipal corporation, created by statute (Private Acts, 1872–'73, ch. 51), and by §1 thereof, it is provided "that it shall be subject to all the provisions contained in the one hundred and eleventh chapter of the Revised Code" (The Code, ch. 62). The last mentioned chapter contains the general statutoiy provisions and regulations of this State in respect to towns and cities, except as the same may be changed or

modified by particular statutes, applying to particular towns and cities. The thirteenth section thereof, (The Code, §3800), prescribes and defines the powers of commissioners of towns and cities, and especially it so operated as to confer upon the commissioners of the defendant, power and authority, very ample in their scope, to levy a tax, not oftener than once a year, on real and personal property, and certain specified subjects of taxation, within the limits of the defendant for municipal purposes. They were authorized also to appoint necessary officers and agents to enforce their by-laws and regulations, and as well, to enforce the same by proper penalties.

The authority of the commissioners of the defendant, to levy a tax upon the taxable property, real and personal, within its limits subject to taxation, for ordinary municipal purposes, is too manifest to admit of question. They were not required to send out commissioners to assess the real estate and other property for taxation. Indeed, they were not authorized to do so; it was their duty to accept and act upon the assessment of the property within its limits for the purpose of county and State taxation, as made by the proper authorities of the county of Richmond in which the defendant is located. *R. R. Co.* v. *Wilmington*, 72 N. C., 73; *Kyle* v. *Fayetteville*, 75 N. C., 445.

It appears that the current tax year in question began on the 5th day of November, 1884, and that notice was given through a newspaper published within the limits of the defendant, on the 13th day of December, to all tax-payers to appear before the town clerk before the 20th of December of that year, and renders each, a sworn list of his taxable property. This, in a small town like the defendant, was not unreasonable in point of length of time. It was the duty of the tax-payers, in pursuance of it, to render such list. Very few of them, however, did so. Those who did not, were in default, and the commissioners were left to ascertain the taxes due from each, as they might be able. Exactly how they did so, does not certainly appear, but it must be presumed that they acted upon reasonable and proper data, in the absence of a sworn list rendered by the tax-payers.

The tax was laid on the 1st day of December, 1884, and a tax list was made up under the direction of the commissioners and placed in the hands of the proper officer for collection.   The mere fact that the person who made up this tax list was not a commissioner—that it was not made up in the immediate presence of the commissioners, did not render it void ; it was not the list of him who made the calculations and set it out in form ; he was the mere agent of the commissioners and did as they directed—the list was theirs, and had their official sanction.

Nor were the tax proceedings void, because they were not set down in the permanent record or minutes of the commissioners, at the time action was given.   They were then set down in writing, on loose papers, to be transferred to the regular minutes, and were afterwards so transferred under the order of the commissioners.   This was sufficient.   The orders were made— that they were, was not questioned on the argument—and that was the material thing to be done.   It is not uncommon to keep rough minutes of such proceedings, and have them entered on the record afterwards, in a fair hand, under the supervision, and, of course, the sanction of the body taking action.

If the tax list as made up contained errors, as it may have done, especially, as most of the tax-payers failed to render a proper list of their taxable property, as they were notified to do, and ought to have done, they were nevertheless not without remedy.   They, or any one or more of them, including the plaintiffs, might have applied to the commissioners to readjust and correct any errors in the taxes charged against them respectively.   They had power to correct errors.   The settlement of the tax list, is always more or less a summary proceeding, and ought to be subject to correction upon proper application, and the Legislature, having an eye to this necessity, has wisely provided by statute (The Code, §3823), the largest reasonable opportunity for correcting errors in it, even after it has passed into the hands of the collecting officer.   This statute expressly embraces municipal corporations such as the defendant, as well as counties.   It

does not, however, appear that the plaintiffs sought such relief. If they had done so, any errors might have been corrected.

And so, likewise, as to the property which it is alleged ought to have been taxed, but was not, because, as the commissioners say, they were of opinion it was not subject to be taxed. The plaintiffs might, after the list was made up, have insisted that that property should be taxed, and if it had turned out that there was error in omitting it from the tax list, such error might have been corrected, and the plaintiffs might thus have succeeded in some measure, in reducing the tax against themselves and others. They did not choose to do so.

The collection of the just revenues of the defendant, cannot be delayed or defeated by injunction for mere irregularities, in some degree occasioned by the taxpayers themselves. It was matter of serious public moment that these revenues should be collected, in order to pay its current expenses, and thus keep up its effective organization and efficiency; they were necessary to preserve the peace, health and good order of the people living and having property there. Every tax-payer was interested in these things, and he ought, if he thought there were some irregularities in the tax levy, to have paid what he was in reason bound to admit he owed. The plaintiffs could have approximately ascertained what each justly owed. They admit that they were tax-payers. They owed something, and this they ought to have paid, or offered to pay. If they believed that certain property had been omitted from the tax list, they could have ascertained what they would have owed, if that had been included. It appears that they had the data that would have enabled them to do so.

It is a settled rule of law, that "when complainant has not paid that portion of the tax which is clearly valid, to which no objection is offered, and which can be easily distinguished from the illegal, the injunction will be denied, since the collection of a legal tax will not be restrained to prevent the enforcement of an illegal one—(16 Wis., 185)—and the bill itself must show what portion of the tax is legal and what is illegal, in order that the

Court may properly discriminate between them.   High on Inj., §363; *London* v. *Wilmington,* 78 N. C., 109.  We think this rule properly applies in this case.   The commissioners obviously had the power to levy the tax.   The plaintiffs admit that they were tax-payers, and it is manifest that they each owed some part of the tax charged against him.   They might have ascertained, at least proximately, what they each owed.   But they did not pay, or offer to pay any part of the same, and as they did not, they cannot maintain this action.   They must pay so much of the taxes as are due, as appears by their own showing, before they can ask for an injunction to restrain the collection of so much as may be reasonably in question.   The judgment must be affirmed.   To that end let this opinion be certified to the Superior Court according to law.

No error.                                                Affirmed.