STATE *EX REL.* ROSS v. KELLY, ASSESSOR.

CONSTITUTION—CHARLESTON—ASSESSMENT—TAXATION — MANDAMUS.
   Under section 33, of art. II., and sections 1, 6, 8, and 9, of art. IX., of
   Constitution of 1868, the tax officers of the city of Charleston, in the
   absence of legislation conferring on such city authority to make as-
   sessments for municipal purposes, must adopt, as the assessment of
   the real property in the city for municipal taxation, the same assess-
   36—45

ment as made for county and State taxes; and mandamus is the proper remedy to compel them to do so.[1]   MR. JUSTICE POPE *dissenting*.

Application by Mary Jane Ross, in the original jurisdiction of this Court, for a writ of mandamus to compel the assessor and the treasurer of the city of Charleston to reduce the assessment of her real property within the limits of said city to that for county and State taxation.   Writ granted.

*Messrs. McCradys & Bacot*, for petitioner.

*Mr. Charles Inglesby*, contra.

Nov. 25, 1895.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   This is an application by the petitioner, Miss Mary Jane Ross, to this Court, in the exercise of its original jurisdiction, for a writ of mandamus, commanding William Aiken Kelly, as assessor, and John Orrin Lea, as treasurer, of the city of Charleston, to correct the assessment of her real estate for municipal taxation in the city of Charleston, so as to make such assessment conform to that placed upon said property by the proper officers for State and county taxes.   The petitioner alleges that, while the assessment of said property for State and county taxes for the year 1893 was $87,790, the assessment made for municipal taxation for that year was $141,085, and, therefore, was in violation of the Constitution, as it was not *uniform* and upon the actual value of the property.   The petitioner further alleges that she made a return of her property, as required by the ordinances and rules of the city of Charleston, to the said assessor for the municipal taxes for the year 1893; that the assessor appraised and set his own valuation upon each piece of land set forth in said return; that he aggregated said valuation, and then calculated the amount of the municipal taxes for the year 1893 according to the rate levied and assessed by the city council,

---

[1] How far a constitutional provision is self-executing is the subject of a note to *Willis* v. *St. Paul Sanitarian Co.* (Minn.), 16 L. R. A., 281.

as well as by the amount of the special tax provided by the laws of the State of South Carolina for the school district of the city of Charleston; that he wrote out the amounts on said return, and delivered it to the city treasurer for collection; that the said treasurer has demanded payment of said taxes, and will proceed to collect the same unless the valuations are corrected. It will be observed that the assessment is not only for municipal taxes, strictly speaking, but for the special school tax provided by the laws of the State of South Carolina for the school district of the city of Charleston.

The allegations of paragraph 3 of the petition raise the question that the only valuation of real property upon which any taxes in the State of South Carolina (whether State, county, municipal or otherwise) can be legally assessed or levied is the valuation ascertained by the officers, and in the manner provided by law, for the purpose of State and county taxes. The following provisions of the Constitution are cited by counsel as bearing upon this question— section 33 of article 11: "All taxes upon property, real or personal, shall be laid upon the actual value of the property taxed as the same shall be ascertained by an assessment made for the purpose of laying such tax." And sections 1, 6, 8 and 9, of article 11. *Section 1:* "The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation of all property, real, personal, and possessory," etc. *Section 6:* "The General Assembly shall provide for the valuation and assessment of all land and improvements thereon prior to the assembling of the General Assembly in 1870, and thereafter on every fifth year." *Section 8:* "The corporate authorities of counties, townships, school districts, cities, towns, and villages may be vested with power to assess and collect taxes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same," etc. *Section 9:* "The General Assembly shall provide for the incorporation and organization of cities and towns, and

shall restrict their powers of taxation, borrowing money, contracting debts, and loaning their credit." In support of her position upon this question, the relator's attorneys also cite the cases of *Carolina Cent. Ry. Co.* v. *City of Wilmington*, 72 N. C., 73; *Kyle* v. *Mayor, etc.*, 75 N. C., 445; *Covington* v. *Town of Rockingham*, 93 N. C., 134; and *Hill* v. *Higdon*, 5 Ohio St., 243.

The relator likewise contends that, although section 8, of article 9, provides that corporate authorities of counties, townships, school districts, cities, towns, and villages may be vested with power to assess and collect taxes for corporate purposes, still this would not confer upon them power to make official valuations of property for the purpose of taxation; that the word "assess" is used in this section in the sense of *lay* or *levy*. The conclusion at which we have arrived renders it unnecessary to decide these two questions. We may say, however, that, unless cities, towns, and villages are allowed to make official valuations of property for the purposes of taxation, they may suffer great inconvenience, and be retarded in their progress. For instance, section 6 of article 9 of the Constitution, requires that the General Assembly shall provide for the assessment of all lands, and the improvements thereon, every fifth year. Suppose a town should be incorporated in the year when said assessment is made, and valuable improvements on the lots greatly enhance their value before the end of the five years, when the next assessment would have to be made. It will at once be seen that, if the town could not be vested by the General Assembly with the power to make assessment of its realty for the purposes of taxation, the taxes would not be upon the *actual* value of the property, as required by the Constitution. It is true, that, as decided in the case of *Ex parte* Lynch, 16 S. C., 32, the General Assembly is not inhibited from providing for a reassessment within the five years. Still, it is not required to do so oftener than every fifth year. Our construction of section 8 of article 9 of the Constitution is, that although it provides that corporate

authorities of cities, etc., *may* be vested with power to assess and collect taxes for corporate purposes, yet, in order to make its provisions effectual, it is necessary that there should be legislative enactment for that purpose, as this section does not undertake to vest this power directly in the corporate authorities aforesaid, but only provides that it "may" be vested.    The General Assembly which convened shortly after the adoption of the Constitution of 1868, seems to have been of this opinion, for, in 1870, an act was passed entitled "An act to enforce a uniform system of assessment and taxation for municipal bodies" (14 Stat., p. 410), which, after reciting in its preamble sections 1 and 8, of article 9, of the Constitution, provided "that all municipal corporations created under or by the laws of this State, and vested with power to lay and collect taxes, are hereby authorized and required to assess all property, real and personal, within their corporate limits, at its actual value, and lay all taxes thereon at a uniform and equal rate," etc.    Although this act is mentioned as one of those specifically repealed in Rev. Stat. 1872, p. 849, c. 147, nevertheless its provisions were incorporated as a separate chapter in Rev. Stat. 1872, p. 97, as part 1, tit. 3, c. 14.    In 1874 an act was passed entitled "An act to reduce all acts and parts of acts providing for the assessment and taxation of property into one act, and to amend the same," which contained the usual repealing clause.    Part 1, tit. 3, c. 14, Rev. Stat. 1872, is not referred to in this act, and must be regarded as repealed, as it is inconsistent with that act.    It does not appear that the provisions of part 1, tit. 3, c. 14, aforesaid, were at any time thereafter re-enacted or mentioned, although the statutes have since 1874 been twice revised.    As a part of the history of the legislation on this subject, it may be proper to state that the General Assembly which met in 1868, immediately after the adoption of the Constitution of 1868, passed an act entitled "An act providing for the assessment and taxation of property." 14 Stat., p. 27.    Under this act district assessors were appointed to take returns of property.

This act provided that the county auditor, the county treasurer, the county commissioners, or a majority of them, should form a county board for the equalization of the real property of their county, with the exception of the real property in the city of Charleston, which should be equalized by a special board thereinafter provided. The special board for the city of Charleston was to consist of the county auditor and six citizens of said city, to be appointed by the city council of said city. By an act passed in 1870 (14 Stat., p. 408), this act was extended, so far as applicable to the city of Charleston, for the purpose of assessment and taxation of *personal* property, taxable in said city for municipal purposes, etc.

It is contended that the act of 1783 (7 Stat., p. 97), incorporating the city of Charleston, confers upon the city power to assess property for taxation by the use of the words: "The city council shall also be vested with full power and authority to make such assessments on the inhabitants of Charleston, or those who hold taxable property within the same, for the safety, convenience, benefit, and advantage of the said city, as shall appear to them expedient." Even admitting that these words refer to the taxation of *property*, as decided in the case of *Charleston* v. *Oliver*, 16 S. C., 47, it must be remembered that this act was passed before the adoption of the Constitution of 1868. The provisions of section 8, of article 9, aforesaid, are in effect a denial of the right of corporations to make assessments of property for taxation until the General Assembly should grant such right; and the charter of the city of Charleston, in so far as it vested such right in the city council, became inoperative. The said act, having been passed in 1783, cannot be regarded as an act making effectual section 8, of article 9, of the Constitution of 1868, which, as we have said, required an act of the legislature for its enforcement. Furthermore, even if these words of the act of 1783 were not made inoperative by the Constitution of 1868, they were inconsistent with legislation upon

this subject after the adoption of said Constitution, and have, therefore, been repealed. Under the foregoing view of the case there is only one legal assessment for the year 1893 in the city of Charleston, and the duty of the city assessor is purely *ministerial.* Mandamus, therefore, is the proper remedy to require the city assessor to correct his assessment and make it conform to that made for the State and county taxes. *Bank of Newberry* v. *Cromer*, 35 S. C., 213; *Bank of Marlboro* v. *Covington*, 35 S. C., 245

It is, therefore, ordered and adjudged, that a peremptory writ of mandamus do issue from this Court, commanding William Aiken Kelly, as assessor of the city of Charleston, to correct the assessment which he made of the property of Miss Mary Jane Ross, the petitioner, for the year 1893, as prayed for in her petition to this Court; and that, upon such correction being made, the order granted by Hon. Henry McIver, Chief Justice of this Court, staying the enforcement of the collection from the said petitioner of the municipal and other taxes of the city of Charleston for the year 1893, be no longer of force and effect.

Mr. Chief Justice McIver. I concur fully in the conclusion reached by Mr. Justice Gary, and only desire to add, that any other conclusion would be subversive of the manifest object of the Constitution to secure uniformity in the assessment and taxation of all property. Section 33, of article II., expressly provides that *all* taxes shall be laid upon the actual value of such property as ascertained by an assessment made for that purpose. Section 1, of article IX., provides that the General Assembly shall provide by law for a *uniform* and equal rate of assessment and taxation; and hence section 8 of that article, permitting the General Assembly to vest in municipal corporations the power to assess and collect taxes for corporate purposes, must be so construed as to conform to the manifest scheme of uniformity expressly required by the previous provisions of the Constitution. The question which the Court is now called upon to decide was not presented or considered,

either in the case of *State* v. *Tolly*, 37 S. C., 551, or in any other case, so far as I am informed, and hence nothing that is said in that case can properly be regarded as applicable to the question as now presented for decision.

MR. JUSTICE POPE. I cannot concur, and will file dissenting opinion.