## WILSON v. GREEN.

(Filed May 11, 1904).

TAXATION—*Assessments—Injunction—Remedy at Law—Acts 1903, ch. 251—The Code, sec. 3822.*

Acts 1903, ch. 251, provides a plain and adequate remedy at law to test the validity and regularity of a tax assessment, and it cannot be tested by an injunction.

ACTION by F. H. Wilson and others against A. H. Green and others, heard by *Judge W. R. Allen,* at chambers Raleigh, N. C., October 10, 1903.

This action was brought by the plaintiffs in behalf of themselves and all other tax payers of Raleigh Township and the city of Raleigh who will come in and make themselves plaintiffs, to declare null and void the valuation and assessment of real property in said township and city for taxation as shown by the lists of the assessors made in the year 1903 for the year 1903-04, and further to enjoin the Board of Commissioners of the county of Wake and the city of Raleigh from levying any tax based upon the said assessment, and the Sheriff of Wake County from collecting any tax levied upon the valuation of real property for taxation in the township and city.

The pleadings in the case, and the evidence, which is in the form of affidavits, exhibits and depositions, are very voluminous, but it will not serve any useful purpose for us to state at length their contents. A substantial statement of the grounds upon which the plaintiffs base their right to relief will be sufficient to present the point in the case.

The plaintiffs allege that the commissioners appointed three list takers and assessors for Raleigh Township at the meeting of the board in April, 1903, but that they were not "discreet freeholders in said township," as the law requires

they should be, in that they had no such knowledge or experience in respect to the value of real property in said township as would render them competent to value the same for taxation, and that they were not freeholders in the township. It is further alleged that the board did not sit together in fixing the value of property, but in many instances, the valuation was made by one member and, in some cases, by two members of the board, and merely acquiesced in by the said member or members who took no part in the valuation, without having had any view of the property. Plaintiffs further allege that the Board of List Takers and Assessors and the Board of Equalization, to whom they made their return, instead of to the Board of Commissioners, as required by law, acted partially, arbitrarily, fraudulently and oppressively in the discharge of their respective duties, and that plaintiffs and other tax payers had no fair or reasonable opportunity to be heard in their own behalf concerning the valuation of their property, though they had requested the Board of Equalization to grant them a hearing; and that by reason of the unlawful and wrongful conduct of the two boards the real property in the said township was not fairly and uniformly assessed as required by the law, but grossly excessive, unequal and discriminating valuations were placed thereon, and that the property of the plaintiffs and of those of the other tax payers of the township, who are similarly situated, will not be "taxed by a uniform rule" and according to its value. Other grave and serious charges are made against the boards, but it is not necessary that they should be set out.

The defendants in their answer, which is full and explicit, deny all of the material allegations of the complaint, and aver that the Board of List Takers and Assessors and the Board of Equalization acted fairly, impartially and justly in the performance of their duties. They set forth with

much detail the manner in which the property was valued
and how the assessments were afterwards adjusted and equal-
ized.    They allege that the assessment in force prior to the
month of June, 1903, was far below the true value of the
property, and that the increase in valuation was made only
when it was found that property had been undervalued.
They further aver that every tax payer had a fair opportu-
nity to be heard before the Board of Equalization, and when
any complaint of excessive valuation was made it received
full consideration from the board.    They admit that C. D.
Arthur, a member of the Board of List Takers and Assessors
is not a freeholder in Wake County, but owns real property
in the county of Carteret.

The case came on to be heard before *Judge W. R. Allen*
upon motion of the plaintiff for an injunction to the hearing,
a restraining order having been previously granted by *Judge
Peebles,* when an order was entered refusing the motion
and the plaintiffs excepted and appealed.

*Busbee & Busbee, Battle & Mordecai* and *Peele & May-
nard,* for the plaintiff.
*Armistead Jones & Son, W. L. Watson, B. M. Gatling* and
*Argo & Shaffer,* for the defendant.

WALKER, J., after stating the case.    While, under our
present procedure, we have but one form of action, the
difference between actions at law and suits in equity having
been abolished, yet the distinction between legal and equit-
able principles has been fully retained, and equity has no
jurisdiction when there is an adequate, complete and certain
remedy at law, and it is equally well settled as a rule of the
Court of Equity, which still obtains, that there will be no
interference by injunction when there is a sufficient remedy
at law.    This simple and elementary doctrine is applicable

to all cases when the complaining party can have adequate relief by the prosecution of his legal remedy in the courts, or when relief can be obtained by resorting to those methods of procedure pointed out by the statute in cases where a body or tribunal, whether strictly speaking a court or not, is invested with power and authority to hear and determine the matter and to administer such relief as the nature of the case may require. This principle is especially applicable to controversies arising out of the exercise of the taxing power. If parties will act seasonably and present their complaints, verified by proper proofs, to the officers of the law clothed with the necessary authority to act in the premises and to redress their grievances, they will find that the remedy afforded by the statute is adequate for the correction of all the errors and injustice liable to be committed by those who are appointed by law to assess property for taxation in the performance of their official duties. By the act to provide for the assessment of property and the collection of taxes (Acts 1903, chapter 251, page 355), commonly called the "Machinery Act," the Board of Commissioners of each county is required to appoint three discreet freeholders in each township to be known as the Board of List Takers and Assessors, who shall list and assess the real and personal property in their respective townships for taxation (section 12), and make a complete return of their assessments, embracing an abstract of the taxable property, to the Board of Commissioners of the county (section 17). It is further provided that the commissioners and the chairman of the Board of List Takers and Assessors for each township (including wards of cities and towns) shall constitute a board of equalization for the county, and shall meet on the second Monday in July and examine the returns of the list takers and assessors and equalize the valuation of property liable to taxation, so that each tract of land or lot, and each piece

or article of personal property, shall be entered on the tax list at its true value in money by raising the valuation when, after investigation, they find that it is too low, and by reducing it when they find that it is too high. This board, it seems, is given ample power and authority to adjust all valuations to a uniform standard, so that the burden of taxation, as it should do, may rest equally upon all persons whose property has been assessed. Power is also conferred upon the Board of Commissioners of the county by section 68 of the act to revise the tax lists and valuations returned to them by the list takers and assessors, and they are authorized to continue in session from day to day as long as may be necessary to make a complete and thorough revision of the lists and valuations. They are required to hear all persons objecting to the valuation of their property or to the amount of the tax charged against them, and they may summon and examine witnesses, including the list takers and assessors and correct the lists of the assessors as may be right and just, "so that the valuation of similar property throughout the county shall be as nearly uniform as possible." They have the right, upon a like examination and investigation, to raise the valuation of any property that they may decide has been undervalued.

In addition to these provisions for securing a fair and just assessment of property, the Legislature has created a board of State Tax Commissioners, with the power, to use the language of the statute, "To exercise a general supervision over the tax listers and assessing officers of this State, and to take such measures as will secure the enforcement of the provisions of this act, to the end that all the properties of this State liable to assessment for taxation shall be placed upon the assessment rolls and assessed at their true value in money," and "To receive complaints as to property liable to taxation that has not been assessed, or has been fraudu-

lently or improperly assessed, and to investigate the same, and to take such proceedings as will correct the irregularity complained of, if found to exist." The board is required to meet regularly on the first Tuesday of March, June, July, August, September and October of each year, and to adjourn the regular meeting from time to time when necessary for the proper transaction of business and the full performance of the duties of the board, and special meetings may he had at any time and at any place in the State if deemed advisable. They have the power under the act to hear complaints and correct individual assessments, or they can, if they see fit, make a revision of the entire assessment.

It would seem that these provisions of the law are comprehensive . enough to afford ample protection to the tax payer against any excessive valuation, discrimination or abuse of power by the taxing officers. A thorough and complete system of procedure is established, by virtue of which the tax payer can be heard upon all questions concerning the valuation of his property for taxation, and be restored to any and all rights he may have lost by any irregular or fraudulent action of the assessors. The Board of County Commissioners and the Board of State Tax Commissioners, if not The Board of Equalization, are not only authorized to adjust and equalize the aggregate valuation of property as fixed by the Board of List Takers and Assessors, but they have the power to act as an original assessing body and review the lists and make an assessment *de novo* (section 9). It is important that the true extent and scope of the powers of these revising tribunals should be clearly understood and stated, because if they are possessed of the authority which, as we think, was intended to be conferred upon them, the plaintiffs have failed to avail themselves of the complete and adequate remedy which is thus afforded by the statute for the redress of their alleged grievances. The

remedy is not only certain but is simple, speedy and effica-
cious, and by every rule of procedure and practice it must
be pursued and exhausted before the complainants can have
recourse to the courts for equitable relief, and certainly
before the Court will extend its aid in preventing or retard-
ing the collection of the public revenues. No rule which
does not impose this duty upon the party who seeks injunc-
tive relief against the collection of a tax could be enforced
without the most disastrous consequences to the State. The
revenues derived from taxation are continually needed for
the support and maintenance of government, and the almost
fatal results which would follow the issuing of an injunction
directed against an entire tax levy should give pause to any
court called upon to act in so grave a crisis. We may safely
say that it should never be done except upon the clearest
necessity and when required for the protection of the ad-
mitted natural or constitutional rights of the citizen, and,
even then, in such a way as to produce the least harm to the
public interests. The controlling principle in such cases is
thus stated by the text writers: "A court of equity will not
by injunction pass upon the action of assessors and boards
of review. Courts cannot convert themselves into assessors
of property for purposes of taxation, and re-assess in every
case where the assessor has erred in his judgment as to the
value of property. In nearly all the States, probably in all
of them, provision is made by law for the correction of
errors and irregularities of assessors in the assessment of
property for the purposes of taxation. This is generally
through boards of revision, or equalization, as they are often
termed, with sometimes a right of appeal from their decision
to the courts of law. They are established to carry into
effect the general rule of equality and uniformity of taxation
required by constitutional or statutory provisions." 2
Beach on Inj., section 1204. And if the complainant does

"not state that he applied to the board to correct the assessment, nor give a reason for not doing so, nor that he could not obtain relief in that way, if entitled to it," the action of the assessors cannot be called in question by an injunction. *Ibid.,* section 1205. "The fundamental principle applicable to such cases is that a court of equity is not a court of errors to review the acts of public officers in the assessment and collection of taxes, nor will it revise their decision upon matters within their discretion if they have acted honestly. Where therefore a particular manner is provided by law, or a particular tribunal designated for the settlement and decision of all errors or inequalities in behalf of persons dissatisfied with a tax, they must avail themselves of the legal remedy thus prescribed, and will not be allowed to waive such relief and seek in equity to enjoin the collection of the tax. And this upon the ground that where one has a complete and ample remedy at law, and slumbers upon his rights, he is estopped from invoking the aid of equity." 1 High on Inj. (3 Ed.), section 943. "If the tax payer may have adequate relief for excessive taxation by an appeal or application to a board of review or equalization, but neglects to avail himself of such remedy, he will be denied relief by injunction." *Ibid.,* section 493. "If the bill fails to negative the remedy at law and presents no reasons for not pursuing that remedy, it is demurrable." *Ibid.,* section 491. The doctrine as thus stated by the text writers has been approved by the courts. *Stanly v. Supervisors,* 121 U. S., 535; *Hughes v. Kline,* 30 Pa., 227; *Meade v. Haines,* 81 Mich., 261; *Keigwin v. Commissioners,* 115 Ill., 347; *Railroad v. Brooklyn,* 123 N. Y., 375; *Stewart v. Maple,* 70 Pa., 221; *Chisholm v. Adams,* 71 Tex., 678; *Bourne v. Boston,* 2 Gray, 494; *Macklot v. Davenport,* 17 Iowa, 379; *Merrill v. Gorham,* 6 Cal., 41; *Meyer v. Rosenblatt,* 78 Mo., 495;

*Chapel v. County,* 58 Neb., 544; *Commissioners v. Mining Co.,* 61 Md., 545.

We find a succinct statement of the principle in 21 Enc. of Pl. & Pr., page 436, as follows: "The statutory remedies thus provided to a party to have objections heard, and errors, such as overvaluation and other matters within the jurisdiction of the particular officers and boards corrected, are exclusive, at least in the first instance. Courts will not inquire into objections which should have been made in this manner, especially in the absence of an attempt to pursue the ordinary remedy." Numerous and pertinent cases, decided in the different States, are collected in a note to this passage, in support of what is therein stated as the law upon the subject.

This Court in *Hilliard v. Asheville,* 118 N. C., 852, which related to a local assessment, adopted and applied the same principle. The present *Chief Justice,* speaking for the Court, says: "At any rate, the act itself prescribed a special method by which the validity and regularity of such assessment can be contested, and the plaintiffs having that remedy cannot proceed by injunction. * * * The act being constitutional, whether any particular lot is overassessed or improperly assessed is a matter which must be litigated in the manner and by the proceeding provided for that purpose by the act itself."

In *Covington v. Rockingham,* 93 N. C., 139, it was sought to enjoin the collection of a tax upon the ground of over-assessment and irregularities, and the Court said: "If the tax list as made up contained errors, as it may have done, especially as most of the tax payers failed to render a proper list of their taxable property, as they were notified to do and ought to have done, they were nevertheless not without remedy. They, or any one or more of them, including the plaintiffs, might have applied to the commissioners

to readjust and correct any errors in the taxes charged
against them respectively. They had the power to correct
errors. The settlement of the tax list is always more or
less a summary proceeding, and ought to ·be subject to cor-
rection upon proper application, and the Legislature, having
an eye to this necessity, has wisely provided by statute
(The Code, section 3823) the largest reasonable opportunity
for correcting errors in it, even after it has passed into the
hands of the collecting officer. This statute expressly em-
braces municipal corporations, such as the defendant, as
well as counties. It does not, however, appear that the
plaintiffs sought such relief. If they had done so any
errors might have been corrected."

We conclude therefore that the plaintiffs have an adequate
remedy for the correction of any inequalities in the assess-
ments, and for the full redress of all the other grievances
of which they complain.

We do not deem it necessary or profitable to discuss at
length the other questions presented in the argument before
us. The defendants have questioned the validity of that
provision of the statute requiring the assessors to be free-
holders upon the ground that they are officers, and by Article
I, section 22, of the Constitution no property qualification
can affect the right to hold office. Even if the requirement
is valid, the plaintiffs cannot attack the legality of the organi-
zation or formation of the Board of Assessors in this col-
lateral proceeding by showing that the assessors were not
freeholders. They should have applied to the Board of
Commissioners to correct their mistake in appointing them,
if there was any mistake, or at least have instituted some
direct proceeding to test their qualification. *Keigwin v.
Commissioners, supra; McDonald v. Teague,* 119 N. C.,
604. They had this remedy, in addition to the right of

applying to the reviewing board for a revision and correction of the assessments.

While it is not necessary to decide the question, it may well be doubted if, under section 30, chapter 558, of the Acts of 1901 an injunction will lie to restrain the collection of a tax because the valuation of property has been excessive or unequal. The party aggrieved seems to be afforded a plain legal remedy by that section in such a case.

The plaintiffs admit that the assessments for the years immediately prior to June, 1903, were fair, equal and uniform. If this be so, it would appear reasonable that the plaintiffs should be required to comply with the ordinary requirement or condition precedent to bringing an action to restrain the collection of a tax by paying, or at least tendering, what is justly due, which could have been approximately ascertained. In this respect the case is not unlike *Covington v. Rockingham, supra.* 2 Cooley on Taxation (3 Ed.), page 1425; *State Railroad Tax Cases,* 92 U. S., 575. *Judge Cooley* says: "Where an injunction has been applied for to restrain the collection of a tax, partly legal and partly not, the Court has made the payment of the legal tax a condition precedent; and it has been strongly intimated, in a case where it was alleged the assessment had by fraud been made too high, that the payment of what the party conceded would be his just proportion ought to be required before an injunction should issue, in order that the proceeding may be as little as possible injurious to the public interests." Cooley on Taxation, *supra.* It is but the familiar application of the universal rule that he who seeks equity at the hands of the Court must first do equity. In respect to this requirement, it has been said in a case not unlike this in principle that the plaintiffs resist the rule by which the value of their property was ascertained and then resist the tax. But surely they must pay the tax by some rule.

Should they pay nothing, and escape wholly because they have been assessed too high? These questions answer themselves. Before they seek the aid of the Court to be relieved of the excessive tax, they should pay what is due and do that justice which is necessary to enable the Court to hear them. It is not sufficient to say in their complaint that they are ready and willing to pay whatever may be found due. They must first pay what is conceded to be due or what can be seen to be due on the face of the complaint. Surely something is due, and the State is not to be thus tied up as to that about which there is no contest by lumping it with that which is really contested. This is equity and is in accordance with the first principles of equity jurisdiction. *State Railroad Tax Cases, supra.* "Where the officers entrusted by law with the duty of making an assessment have fraudulently assessed property above its real value for the purpose of relieving resident tax payers from their due proportion of the taxes, and have not exercised their judgment upon the valuation, but have arbitrarily made an excessive assessment, while it would seem to be proper to enjoin a sale of land for the excess in such assessments, the injunction should not extend to the entire tax, and should only be allowed upon payment of the proportion which is justly due." 1 High, *supra* (3 Ed.), section 500; *Merrill v. Humphrey,* 24 Mich., 170. This was said in a case where it appeared there was no review or other method of relief provided by statute.

While we must deny to the plaintiffs the relief they seek in their complaint, they have made serious charges against those intrusted with the administration of this important branch of the law. It is true the charges are denied, but it yet remains to be said that the law should be so justly administered as to avoid even the appearance of wrong. The State has no right to require of the tax payer any more than his just proportion of the public burden in the way of tax-

WILSON *v.* GREEN.

ation, and any exaction which exceeds this limit and compels him to make a larger contribution than of right he should be called upon to make is of course unjust and unlawful, and the revising tribunals who are invested with the necessary power and jurisdiction should see to it that he is protected against any wrongful exaction arising out of the abuse of power, or the misconduct of subordinate officers. A fair assessment of property at its true value, with the lowest possible rate, is the true rule of taxation, for it is just to all and distributes the burdens uniformly. These remarks are general, and not intended as any intimation of opinion that the allegations of the complaint are true, for that matter is not now before us.

So far as it appears from the pleadings and findings the plaintiffs cannot prosecute this action with success. It must therefore be certified that there is no error in the ruling of the Court refusing to continue the injunction to the hearing.

No Error.