This is an action to set aside and annual the creation of a special-tax school district in Haywood County and to enjoin the collection of the special school tax therein. It is brought by certain taxpayers of Rock Hill School District against the Sheriff and County Commissioners of HAYWOOD and the School Committee of Rock Hill District.
The complaint alleges that the district was not laid off "as compact in form as practicable, and the convenience and necessities of the patrons were not consulted," and that the lines were so run to exclude (576) certain parties opposed to the tax and include others favorable to it.
In the hearing below, his Honor found as facts that "one-fourth of the freeholders of said district petitioned for the same; that the county board of education endorsed said petition, and that an election was regularly held, at which a majority of the qualified voters in said district voted for the tax."
Upon these facts the courts held that the establishment of the district was a matter in the discretion of the county board of education and the court had no power to enjoin the collection of the tax.
Section 4115 of the Revisal of 1905 makes provision for the creation of special-tax school districts, and the part of this section material to this case is as follows:
"Special school-tax districts may be formed by the county board of education in any county, without any regard to township lines, under the following conditions: Upon a petition of one-fourth of the freeholders within the proposed special school district, endorsed by the county board of education, the board of county commissioners, after thirty days notice at the courthouse door and three public places in the proposed district, shall hold an election to ascertain the will of the people within the proposed special school district whether there shall be levied in such district a special annual tax . . . In case a majority of the qualified voters at the election is in favor of the tax, the same shall be *Page 555 
annually levied and collected in the manner prescribed for the levy and collection of the other taxes."
The plaintiffs appealed to this Court from the order dissolving the injunction.
After stating the case: The statute above quoted makes four requirements: (a) a petition from one-fourth of the freeholders within the proposed district; (b) the endorsement of this petition by the county board of education; (c) the holding of an election in the district upon this question; (d) the vote of a majority of the qualified voters in favor of the tax.
It is not alleged that any of these requirements of the statute have not been complied with, nor is their any allegation that the tax, the collection of which is sought to be enjoined, is levied or assessed for an illegal or unauthorized purpose, or that it is illegal or invalid, or the assessment is illegal or invalid. The county board of education (577) is not made a party to this action. All irregularities alleged in the complaint relate to the location of the lines of this special-tax district.
The statute vests the power of determining the boundaries of a district solely in the county board of education. There is no suggestion anywhere of misconduct or any impropriety on the part of any member of the board of education. None of the things complained of were done or are alleged to have been done by the board of education. The charges made refer to individuals, advocates of the special district, but in no way officially connected with the establishments of the same.
It appears that the petition for the establishment of this district was circulated among the freeholders and was well known to the plaintiffs herein. This petition had to be presented to the board of education and receive its endorsement. The time of the meeting of the board of education is fixed by law. If there were objection to the endorsement of this petition by the board of education, it was the duty of those objecting thereto to appear before the board of education and state their objections. It would be manifestly unfair to the board of education for plaintiffs to attack this action as unwise and unjust, when they had had the opportunity and the occasion to make known to the board the reasons why such actions would be unwise and had failed to do so. If the board had refused to give them a fair and impartial hearing, the courts would have been open to them for relief upon the charges of fraud or misconduct; but they cannot stand by in silence, while the board takes such action as, *Page 556 
in the light of facts before it, seems wise, and then make complaint. They ought not to remain quiescent until the will of the qualified voters has been expressed, the verdict of the polls entered against them, and then apply to the court for the aid of its equitable power. Covington v.Rockingham, 93 N.C. 134; Wilson v. Green, 135 N.C. 351. The only matters alleged which can affect the proper creation of the district are contained in paragraph three of the complaint, where it is alleged that the district is not "as compact in form as practicable, and the convenience and necessities of the patrons were not consulted." "The county board of education shall divide the townships into convenient school districts, as compact in form as practicable. It shall consult the (578) convenience and necessities of each race in setting the boundaries of the school district." It will be seen that this section bears upon the division of the various townships into the usual school districts and makes no reference to special-tax districts. We think that the Legislature set out in section 4115 all of the requirements essential to a special-tax district; but, admitting that section 4129 should be construed as applying to all districts, whether ordinary or special districts, we still think that the court has no right or power to annual this district upon the grounds. Necessarily, the questions of compactness and conveniences must be addressed to somebody's judgment and discretion. The statutes unequivocally delegate this duty to the county board of education.
The only absolute standard of compactness would be a circle, with the schoolhouse in the center. Such would be a physical impossibility. All other opinions of compactness would be relative and not capable of exact definition. The only absolute standard of convenience would be a schoolhouse at every man's door, which, of course, is out of the question. These things are of necessity relative to and dependent upon many other circumstances and conditions, all of which have fluctuating values in the determination of what is best. They lay of the land, streams, roads, mountains and many other things must all be considered and given their proper influence. Conditions in adjoining districts, even, ought sometimes to control, since it may and does happen that a change in one district, apparently advisable for that district, would be on the whole unwise, because it would necessitate injurious changes in adjoining districts. There are 7,707 districts in the State, and it is highly probable that in each of these there are one or more persons who with some degree of reason think that, from the standpoint of convenience and compactness, the district is not correctly laid off. For the courts to undertake to pass upon such matters would be manifestly unwise. The county board of education is supposed to have acquired, by observation, study and experience, a knowledge of the varying needs of the county, which no *Page 557 
court could hope to obtain by a mere examination of witnesses. There is no principle better established than that the courts will not interfere to control the exercise of discretion on the part of any officer to whom has been legally delegated the right and duty to exercise that discretion.
The leading case in our reports is probably that of Broadnax v.Groom, in 64 N.C. 244. This case is specially applicable, for that it was an action to enjoin the collection of a tax for building bridges, upon the ground that the commissioners were about to expend practically all of the tax levy to build a bridge "where none had ever (579) before been-not connected with any public road, and otherwise unnecessary, inconvenient and extravagantly expensive." Pearson, J., in writing the opinion of the Court, says: "So the case before us is within the power of the county commissioners. How can this Court undertake to control its exercise? Can we say such a bridge does not need repairs, or that in building a new bridge it should be erected, as heretofore, upon posts, so as to be cheap, but warranted to last for some years, or that it is better policy to locate it a mile or so above, at a heavier outlay at the start, but such as will insure permanence and be cheaper in the long run? In short, this Court is not capable of controlling the exercise of power on the part of the General Assembly or of the county authorities, and it cannot assume to do so without putting itself in antagonism as well to the General Assembly as to the county authorities and erecting a despotism of five men which is opposed to the fundamental principles of our government and the usage of all times past. For the exercise of powers conferred by the Constitution of the people must rely upon the honesty of the members of the General Assembly and of the persons elected to fill places of trust in the several counties. This Court has no power, and is not capable, if it had the power, of controlling the exercise of power conferred by the Constitution upon the legislative department of the government or upon the county authorities."
This case has been frequently cited with approval by this Court. Wilsonv. Charlotte, 74 N.C. 759; London v. Wilmington, 78 N.C. 111; Ashcraftv. Lee, 79 N.C. 35; Evans v. Comrs., 89 N.C. 158; Vaughan v. Comrs.,117 N.C. 434; Herring v. Dixon, 122 N.C. 422; Stratford v. Greensboro,124 N.C. 132; Black v. Comrs., 129 N.C. 125; Wordsworth v. Concord,133 N.C. 394; Bank v. Comrs., 135 N.C. 245; Glenn v. Comrs., 139 N.C. 418;Rosenthal v. Goldsboro, 149 N.C. 134; Board of Education v. Comrs.,150 N.C. 124.
In Board of Education v. Comrs., 150 N.C. 121, Mr. Justice Hoke says: "It is recognized doctrine that the writ of mandamus is the appropriate remedy to enforce the performance of duty on the part of the county officials, when the duty in question is both peremptory and *Page 558 
explicit, but that such a writ will not be granted to compel the performance of an act involving the exercise of judgment and discretion on the part of the official to whom its performance is committed."
It would seem that where a board cannot be compelled to act (580) by mandamus, it cannot be restrained from acting by injunction. The doctrine is well stated in High on Injunctions, sec. 1240: "An important modification of the doctrine of equitable interference with the proceedings of municipal corporations is found in the limitations and restrictions which are placed upon the jurisdiction in all cases where it is sought to interfere with or control the judgment or discretion of municipal bodies upon matters properly entrusted to them by law. A municipal corporation being a political body, clothed with certain legislative and discretionary powers, equity is ordinarily averse to interfere by injunction with the exercise of those powers at the suit of a private citizen. And no principle of equity jurisdiction is better established than that courts of equity will not sit in review on the proceedings of subordinate political or municipal tribunals, and that where matters are left to the discretion of such bodies the exercise of that discretion in good faith is conclusive, and will not, in the absence of fraud, be disturbed. And the fact that the court would have exercised the discretion in a different manner will not warrant it in departing from the rule."
In United States v. California, 148 U.S. 43, the Court says: "It is an universal principle that where a power or jurisdiction is delegated to any public officer or tribunal over the subject-matter, and its exercise is confined to his or their discretion, the acts so done are binding and valid as to the subject-matter, and the individual rights will not be disturbed collaterally for anything done in the exercise of that discretion within the authority and power conferred. The only question which can arise between an individual claiming a right under the acts done and the public or any person denying its validity are power in the official or fraud inthe party."
A case directly in point is Trustees v. Directors, 190 Ill. 390, where it is held that the decision of a county superintendent of schools in favor of forming a new school district will not be interfered with by injunction, upon the ground that such a district was unnecessary.
Another interesting case is Lane v. Morrill, 51 N. H., 422, where it is held that an injunction will not be granted to restrain the organization of a school district which is being made by the proper authorities, where the gravamen of the bill is that officials have acted upon illegal and improper evidence upon the hearing of the application for the formation of the district.
In Roth v. Marshall, 158 Pa., 272, the rule and the reason are so forcefully stated that we quote the opinion at some length: "The subject *Page 559 
of controversy in this case is the location of a district schoolhouse. Reduced to its simple terms, the question raised is whether (581) the exercise of official discretion of a board of school directors shall be supervised and directed by a court of equity. If so, the selection of teachers and text-books, the fixing of the rate for the levy of school and building taxes, the arrangement of the course of study, together with other similar duties, will be hereafter done subject to the opinion of the courts. The administration of the school laws will in that case depend on the discretion of a chancellor, whose decrees will be enforced by injunction or mandatory order. Such a conclusion would be violence to the school laws and to the well-settled rules that fix the limits of official discretion. If an officer neglects or refuses to enter upon the discharge of the duty which the law imposes on him, the courts will quicken or compel action by a writ of mandamus. If he goes beyond what the law requires, attempts that which is ultra vires, or abuses his discretion in any manner, the courts will restrain him by injunction. The ground intermediate between these extremes is the legitimate range of official discretion, within which the officer on whom the law had cast a duty may determine the manner of its performance."
In the text of the A. E. Enc. of Law, 25 p. 32, it is said: "The primary authority to lay off territory into school districts is in the Legislature, and this without the assent of the inhabitants. But such power may be delegated to a subordinate body or officer."
In our State, this power is delegated to the county board of education, and, being clothed by the Legislature with power to determine the very questions presented to the court, the action of the board within the limits of the power conferred is no more subject to review than the act of the Legislature itself.
Again, it will be well to observe that the board established a special-tax district, subject to the approval of the people at the polls. When the citizens voted, they voted not only for the tax, but for the district. Hence the question presented is in its analysis a political one, to be fought out on the hustings. The courts have always refused to enter into this domain. S. v. Stanton, 73 U.S. 50; 8 Cyc., 845; Ward v. Comrs.,146 N.C. 536.
While we are constrained by the reasons given and the authorities cited, for which we are indebted to the able and conclusive argument in the brief of defendant's counsel, from which we have quoted at length, to hold the courts powerless to interfere and aid the plaintiffs, we cannot refrain from condemning any attempt to gerrymander a special-tax school district. The map of this district as established, attached to the record, shows that such an attempt was (582) successfully made, but the affidavits disclose that no map was *Page 560 
presented to the county board of education or the county commissioners, and we cannot believe they would have sanctioned it if they had been better informed. In the effort to secure better facilities and more enlarged opportunities for educating the children of a community, the overzealous overstep the limitations of prudence, even in a cause so praiseworthy, and create and engender strife and bitterness, which retard rather than advance the cause of education in such communities. The wisdom and sound judgment of the county boards are expected to correct such tendencies, and in every case, before final action, they should become familiar with every detail, so that strife and bitterness may, as far as possible, be eliminated and the education of the children of the communities under their charge be advanced in quiet, good feeling and justice. In so far as the boards of education fail to accomplish this, they fail to meet the high responsibilities imposed upon them. There is in his Honor's ruling
No error.
Cited: Gill v. Commissioners, 160 N.C. 184.