848

CATHOLIC SOCIETY OF RELIGIOUS AND
LITERARY EDUCATION v. MADISON
COUNTY et al.

SAME v. TOWN OF HOT SPRINGS et al.

Nos. 3745, 3746.

Circuit Court of Appeals, Fourth Circuit.

Jan. 8, 1935.

Frank Carter, of Asheville, N. C. (Carter & Carter, of Asheville, N. C., on the brief), for appellant.

John A. Hendricks, of Marshall, N. C., and James E. Rector, of Asheville, N. C., for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The Catholic Society of Religious and Literary Education, a corporation organized under the laws of Louisiana, brought two suits in equity in the District Court, one against the county of Madison, N. C., and the other against the town of Hot Springs, N. C., relative to taxes imposed upon certain properties of the society by the respective municipalities. It claimed in each suit that the properties were used for religious, charitable, and benevolent purposes, and were therefore exempt from taxation under the Constitution and laws of the state. Taxes for the years 1928 to 1931, and also for the years 1932 and 1933 were involved; and the facts in regard to the two periods must be separately considered, since they differ materially in the course that the litigation between the parties has followed. Taxes were levied on the properties by the county authorities for the years 1928 and 1929 in the aggregate sum of $5,029.78, and upon the demand of the agents of the county, the plaintiff on October 20, 1931, paid this amount under protest. On the same day, taxes levied for 1930 in the sum of $2,382.30 and for 1931 in the sum of $1,569.08 were also paid by the society under protest. Subsequently, on November 13, 1931, the society made demand upon representatives of the county for the refund of the aggregate principal sum of $8,981.16 thus paid, and when it was refused, brought suit on August 25, 1932, in the District Court, for the purpose inter alia of recovering the money; but this suit was dismissed by the District Judge on August 16, 1933, on the ground of lack of jurisdictional amount, in that the complainant had joined in one suit four separate and distinct transactions, that is to say, the collection of taxes for each of the four years, none of which separate amounts equaled the sum of $3,000, exclusive of interest and costs; and on the further ground that the suit could not be maintained because the complainant had not exhausted the administrative remedies provided by the statutes of North Carolina. From this decree of the District Court, the taxpayer took no appeal.

In 1932, the county assessed and levied general and special taxes for the year, and the taxes not being paid, the properties were sold at public auction to the county for the amount of the taxes, penalty, and costs, in the aggregate sum of $1,449.33, and a certificate of tax sale was issued to the county. Again, in the year 1933, there was a similar levy upon the properties in the sum of $1,-

077.20, and the taxes not having been paid, the properties were placed on a list in the hands of the tax collector. From these proceedings it is claimed that a colorable lien upon the properties and a cloud upon the title of the society were created.

Similar proceedings were had with reference to taxes levied by the town on the same properties in the years in question. For the years 1928 to 1931, taxes in the aggregate sum of $3,903.54 were levied, and on October 20, 1931, were paid under protest, followed by an unsuccessful demand for a refund on November 13, 1931, the institution of a suit therefor on August 24, 1932, in the District Court, and a dismissal of the suit on August 16, 1933, for the same reasons as have been set out above in regard to the suit of the taxpayer against the county. Taxes were also levied by the town for the year 1932, and the taxpayer failing to pay them, the properties were sold to the town on September 4, 1933, for $960.21. Taxes for the year 1933 were assessed in the sum of $681.-40, and bill for the same was placed in the hands of the tax collector.

The prayer of the bill in each of these cases is that the court take such action as may be requisite to remove the clouds upon the society's title to its properties, to enforce its exemption from taxation by the taxing authorities, and to refund to it such sums as upon an accounting may be found to have been unlawfully exacted.

The purposes for which the properties of the society have been used are set out in some detail in the bills of complaint. An answer was filed by the county in the case against it, in which it was denied in general terms that the properties had been used for such purposes as to exempt them from taxation under the Constitution and laws of the state. The town filed a motion to dismiss in the case against it. Both cases were heard together in the District Court, the case against the county on bill and answer, and that against the town on the motion to dismiss; but counsel are agreed that the substantial question on the merits is the same in both cases, that is, whether the allegations of the bills as to the uses to which the properties have been put are sufficient to show that they are free from taxation. The point is also made in both cases, looking to the merits, that the society is not entitled to tax exemption, because it is a Louisiana corporation, and the law of North Carolina since 1901, now codified in section 7971 (87) of the North Carolina Code of 1931, pro-

vides that nothing in the statutes shall be construed to exempt from taxation any property situated in the state belonging to any foreign corporation. The important and interesting questions thus raised on the merits do not seem to have been passed upon by the North Carolina courts; and this court is not now required to pass upon them, because it is clear that the society cannot prevail in the pending suits, even though under a proper construction of the Constitution and laws of the state, its properties are exempt from taxation.

■ It is a conclusive answer in both suits to the society's claims for a refund of the taxes for the years 1932 and 1933, that it not only failed to avail itself of the administrative remedies provided by the state statutes, but also failed to pay the taxes under protest before bringing the suit, as provided by the laws of the state. Sections 7971 (3), 7971 (4), and 7971 (5) of the 1933 Supplement to the North Carolina Code of 1931, provide for the creation of a state board of assessment, to exercise general supervision over the system of taxation throughout the state, and to constitute a state board of equalization and review, with power to hear and adjudicate appeals from boards of county commissioners and county boards of equalization and review as to property that has been improperly taxed through error or otherwise.

Section 7880 (194) provides that whenever a person shall have a valid defense to the enforcement of the collection of a tax imposed upon him or his property, he shall pay the tax to the proper officer under protest in writing, and may, within 30 days thereafter, demand the same in writing from the Commissioner of Revenue of the state, if a state tax, or from the treasurer, if a county or town tax, and if the same shall not be refunded within 90 days, may sue the official for the amount demanded; and if it shall be determined that the tax was illegal or unauthorized, judgment shall be rendered therefor, with interest, and the amount thereof shall be refunded by the state.

■■ It is unnecessary to decide whether a taxpayer, who sues on account of an illegal assessment must show not only that he has first pursued the administrative remedies without success, but also that he has made payment, under protest, of the tax illegally demanded. Compare Southern Railway Co. v. Cherokee County, 177 N. C. 86, 97 S. E. 758; Atlantic Coast Line R. R. v. Bruns-

wick County, 178 N. C. 254, 100 S. E. 428; Wilson v. Green, 135 N. C. 343, 47 S. E. 469; Marion Mfg. Co. v. Commissioners, 189 N. C. 99, 126 S. E. 114; Hart v. Commissioners, 192 N. C. 161, 134 S. E. 403. The fact is that the society pursued neither course, as to the taxes for 1932 and 1933, before instituting the pending suits, and it is clear in such a situation that the suits will not lie. We need only refer to the decisions of the Supreme Court of the United States and of this court with reference to the same state statutes in Henrietta Mills v. Rutherford County, 281 U. S. 121, 50 S. Ct. 270, 74 L. Ed. 737, and Id. (C. C. A.) 32 F.(2d) 570, in which it was held that a suit in equity to enjoin the collection of a state tax, alleged to be violative of the Fourteenth Amendment on the ground of an arbitrary and excessive assessment, would not lie in the federal court, since the plaintiff had a plain, adequate, and complete remedy at law by first paying the tax and then suing to recover it. The society would avoid the effect of this decision on the ground that it related only to a charge of improper administration of the tax laws, whereas here the taxpayer challenges the right of the state to impose any tax whatsoever. Apparently reliance is also placed upon section 858 of the North Carolina Code of 1931, which provides that no injunction may be granted by any court to restrain the collection of a tax in North Carolina, unless such tax is invalid or assessed for an illegal or unauthorized purpose. The attempted distinction, however, is without validity, for the fundamental rule in equity in the federal courts is that a suit will not lie when there is an adequate remedy at law; and it is obvious that the remedy in North Carolina is complete, whether the ground upon which the tax is attacked is illegality in the method of assessment or a total lack of power to impose any tax whatsoever. Even if it be assumed that under the state statute the complainant could have applied to the state court for an injunction, that would be of no assistance in this situation because, as pointed out in Henrietta Mills v. Rutherford County, 281 U. S. 127, 50 S. Ct. 270, 74 L. Ed. 737, there is no power in the state to alter the dividing line between law and equity procedure in the federal courts.

■ It is equally clear as to the taxes for 1928–1931, that the complainant is barred from pursuing the present suits by the prior decisions of the District Court, from which no appeal was taken. That court held that the requisite jurisdictional amount of $3,000 could not be attained by adding together the taxes for the several years in suit. We express no opinion as to the correctness of this holding, but see Marshall v. Holmes, 141 U. S. 589, 12 S. Ct. 62, 35 L. Ed. 870; Edwards v. Bates County, 163 U. S. 269, 16 S. Ct. 967, 41 L. Ed. 155; Elliott v. Empire Natural Gas Co. (C. C. A.) 4 F.(2d) 493; Citizens' Bank v. Cannon, 164 U. S. 319, 17 S. Ct. 89, 41 L. Ed. 451; Wilson v. Kiesel, 164 U. S. 248, 17 S. Ct. 124, 41 L. Ed. 422; Woodmen of the World v. O'Neill, 266 U. S. 292, 45 S. Ct. 49, 69 L. Ed. 293; Provident Mutual Life Ins. Co. v. Parsons and Wilson (C. C. A.) 70 F.(2d) 863. As far as the parties to this case are concerned, the point is res adjudicata, for the principles of res adjudicata apply to questions of jurisdiction as well as to other issues. Thus in Baldwin v. Iowa State Traveling Men's Ass'n, 283 U. S. 522, 525, 51 S. Ct. 517, 518, 75 L. Ed. 1244, it was said as to a judgment on the question of jurisdiction:

"Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause.

"While this Court has never been called upon to determine the specific question here raised, several federal courts have held the judgment res judicata in like circumstances. Phelps v. Mutual Reserve Fund Life Ass'n (C. C. A.) 112 F. 453, 61 L. R. A. 717, affirmed on other grounds 190 U. S. 147, 23 S. Ct. 707, 47 L. Ed. 987; Moch v. Virginia F. & M. Insurance Co. (C. C.) 10 F. 696; Thomas v. Virden (C. C. A.) 160 F. 418; Chinn v. Foster-Milburn Co. (D. C.) 195 F. 158. And we are in accord with this view."

See, also, American Surety Co. v. Baldwin, 287 U. S. 156, 166, 53 S. Ct. 98, 77 L. Ed. 231, 86 A. L. R. 298; Daigle v. U. S., 42 Ct. Cl. 124; Glackin v. Zeller, 52 Barb. (N. Y.) 147.

Affirmed.