P. PETERSON, *as County Treasurer*, etc., v. THE FIRST NATIONAL BANK OF OSAGE CITY.

### No. 335.

1. BOARD OF EQUALIZATION — *County Commissioners — Minutes of Proceedings.* Where from the record of a board of county commissioners it appears that such board was in regular session on the 5th, 6th, 7th, 8th and 9th of June, 1893, and that on the latter day it adjourned to the 19th of the same month; and where such record further shows that such county commissioners met on the first-named date as a board of equalization, and that certain acts which would properly have been done by the last-named board were done on each of the first four of said days; and where such record does not show that the board of equalization, as such, adjourned on June 5, or that it was reconvened on any subsequent day; *held*, that it must be presumed that the board of county commissioners, in addition to their usual functions, attended to such equalization work as came before them, and that the board of equalization was not in session on any of the said days, except possibly on June 5.

2. ——— *Evidence of Proceedings — Entry on Journal.* Where, under the foregoing facts, the defendant offered to prove that the minutes of the board of equalization were kept on slips of paper

which had been lost, and where such offer was rejected for the reason that the minutes of the board of county commissioners contained the entry under the authority of which the increased assessment of the plaintiff's property was made, *held*, not error.

Error from Osage district court; WILLIAM THOMSON, judge.   Opinion filed February 18, 1899.   Affirmed.

*C. S. Briggs*, county attorney, and *J. H. Staveley*, for plaintiff in error.

*Robert C. Heizer*, for defendant in error.

The opinion of the court was delivered by

MILTON, J.: On May 19, 1893, the defendant in error, a banking corporation doing business at Osage City, made a statement of its property subject to taxation for that year, as follows: "Shares in national bank, amount capital, $50,000."   The assessor thereupon assessed said stock at $16,291, from which he deducted the assessed valuation of the bank's real estate, leaving the personal-property valuation at $13,085.   The statement was thereafter duly filed in the county clerk's office, together with the assessor's verified report as required by law.   On Monday, June 5, 1893, the county commissioners of Osage county met at the court-house.   The minutes of the meeting, as entered of record by the county clerk, begin as follows:

"LYNDON, KAN., Monday, June 5, 1893.—The board of county commissioners of Osage county, Kansas, met in regular monthly session.   Also, as a board of equalization, pursuant to law.   Present: Commissioners Morgan, Sowell, and Crum, Geo. Rodgers, county clerk, and Ellis Lewis, county attorney."

The first four items of business transacted related to assessment and taxation.   Then followed the allow-

ance of a number of claims against the county. The last item of that day's business related to a personal-property assessment. The minutes close in these words : "Adjourned by order of the board to meet June 6, 1893." The minutes for June 6 begin as follows :

"LYNDON, KAN., Tuesday, June 6, 1893.—The board of county commissioners of Osage county, Kansas, met pursuant to adjournment. Present : Full board, county attorney, and county clerk."

The first business transacted on that day was the allowance of a number of claims. Afterward two personal-property assessments were reduced "by order of the board." All of the subsequent transactions appear to have been performed by the board of county commissioners, and the last statement in the minutes reads : "Adjourned by order of the board, to meet June 7, 1893." The minutes for June 7 begin in the same words as do those for the two preceding days, and it appears that only two items of the very large volume of business transacted related to assessments. No mention is made of an adjournment, but the minutes of the next day begin in the same language as do those of the preceding meetings. The first entry in the minutes for June 8 is like that in the minutes of June 6. The first business transacted was by the board of commissioners, and several claims were allowed. Then follows this entry :

"In the matter of the several banks of Osage county, the county clerk was directed to equalize the assessment of said banks upon a basis of fifty per cent. of the actual value, including the capital stock and the surplus, allowing no credit for premiums. By order of the board."

The minutes show that afterward other business was transacted by the board of county commissioners

and that "the board" adjourned.   On June 9, all the proceedings were by the board of county commissioners, which adjourned to meet June 19.   On June 20 the county clerk made certain entries on the personal-property statement of the defendant in error and on the assessor's book in pencil, increasing the assessed valuation of the bank's property to $21,442, accompanied by the statement that it was "assessed by order of board, June 8, 1893."   The taxes for 1893 were computed and extended on the tax-roll in accordance with such increased valuation, the bank's personal tax being $1155.07.   Of this it paid $677, the proper amount on the basis of the original assessment, leaving a balance unpaid of $478.07.   The county treasurer was about to issue a warrant for the collection of this balance, when, on July 13, 1894, the present action was commenced, and on the same day a temporary injunction was granted restraining him from collecting such unpaid tax and from issuing any warrant for that purpose.   The petition alleged that the assessment had been made and returned according to law by the city asssessor, and that such assessment had been illegally changed and raised by the county clerk of Osage county, under an order of the board of county commissioners of that county.   The defendant's demurrer to the petition was overruled, and he thereupon filed an answer containing a general denial only.   On these pleadings a trial was had by the court, resulting in a perpetual injunction against the collection of the tax.

The bank having introduced the minutes already referred to, showing that the increase of its assessment was ordered to be made by the board of county commissioners as such, the defendant offered to prove by each of the commissioners that the record of the

proceedings of the board of equalization on the dates above named was kept on slips of paper, with the intention that the same should be transcribed and recorded; that the county clerk failed to copy into the journal of proceedings of the commissioners the acts done by the board of equalization; and that by a mistake the county clerk failed to make the minutes show that during the sessions of the board it would act sometimes as a board of county commissioners and sometimes as a board of equalization, and when acting as a board of equalization it was so declared by the chairman, and that it did not pretend to be acting as a board of county commissioners in the equalization of the taxation of any property whatever. Defendant offered to prove, also, that when the action was taken in respect to the assessment of the bank's property the board was acting as a board of equalization, and that the slips on which the memoranda of such matters were entered had been lost. The court sustained the plaintiff's objection to the introduction of such testimony.

The foregoing facts affirmatively show that the board of county commissioners of Osage county was in regular session on the 5th, 6th, 7th, 8th and 9th of June, 1893, and that on the latter day it adjourned to the 19th of the same month. It further appears that the county commissioners met on the first-named date as a board of equalization, and that certain acts which would properly have been done by the last-named board were done on each of the first four of said days. The whole number of such acts probably did not exceed twelve, whereas the items of business transacted during those days by the board of county commissioners numbered probably 300. The record does not show that the board of equalization, as such, adjourned

on June 5 or that it was reconvened on any subsequent day.  We think it must be held that the board of county commissioners, in addition to their usual functions, attended to the few items of equalization work which came before them, and that, as a matter of fact, the board of equalization was not in session on any of said days, except, possibly, on June 5.  The offer by the defendant below to prove that the minutes of the board of equalization were kept on slips of paper, which had been lost, was properly rejected, for the reason that the minutes of the board of county commissioners contained the entry under the authority of which the increased assessment of the bank's property was made.  The defendant did not offer to prove that the board of equalization adjourned on June 5, and was duly reconvened on June 6, and so on, for each day, until June 8, as appears to have been true of the action of the board of equalization whose proceedings were called in question in the case of *Fowler v. Russell*, 45 Kan. 427, 25 Pac. 871.  There the court said :

"In the record of the proceedings it appears that the commissioners convened as a board of equalization on June 7, as required by law, and that they adjourned from day to day until June 15, when they completed the work of equalization and adjourned *sine die*."

The record of that board of equalization was entitled : "Proceedings of the Board of Equalization of Wabaunsee County."  Irregularities consisted in the fact that the proceedings of the board were occasionally interrupted in order that the members thereof might perform some of the functions of the board of county commissioners, while here it appears that the board of county commissioners at rare intervals performed some of the functions of the board of equalization.  An examination of the original record in the

33—8 KAN. APP.

foregoing case has shown that the distinction we have pointed out between the two cases is marked.

It is not necessary to determine any other questions presented to us, but it is not improper to observe that the action of the county clerk in changing the assessment was merely clerical and would be upheld if the proceedings of the board of equalization had been valid. For the reasons we have stated, the judgment of the district court will be affirmed.