FRED. WOLFENDEN v. BOARD OF COMMISSIONERS OF BEAUFORT COUNTY.

(Filed 9 March, 1910.)

1. Taxation—Solvent Credits—County Commissioners—Revision—Interpretation of Statutes—Constitutional Law.

Under sec. 68, ch. 440, Public Laws of 1909, the board of county commissioners are given full power and authority, and provided with ample machinery to revise the taxable value of property, and a resolution simply requesting a taxpayer to properly list his solvent credits, upon advice received by the board that he has not done so, is not a revision of an assessment for taxes in accordance with the requirements of the statute, passed to make effective the mandates of sec. 3, Art. V, of the Constitution.

2. Same—Meetings of Board.

The power of the county commissioners to revise the tax list of a county for the year 1909 is derived from sec. 68, ch. 440, of the legislative acts of that year, which requires that they shall meet on the second Monday in July, and shall sit for one day at least, and, when necessary, until the revision is complete; and when they, in attempting to revise the tax list, have increased the value of a solvent credit of a taxpayer without regard to this requirement, at a subsequent and separate meeting, the increase in the valuation is void.

3. **Same.**

> When the board of county commissioners have completed the revision of the tax lists as authorized and empowered by sec. 68, ch. 440, Laws 1909, its duties and powers as a revising board cease and determine, until the time appointed by the statute for the next succeeding year.

4. **Taxation—County Commissioners—Board of Equalization—Distinct Entities.**

> The powers and duties of equalization conferred by sec. 18, ch. 440, Laws 1909, are not conferred upon the board of county commissioners as a distinct corporate body, but as a board of equalization to act every fourth year, when taxable property is revalued.

5. **Taxation—County Commissioners—Revision—Notice—Hearing.**

> It is necessary for the board of county commissioners at its meeting for the revision of the list of taxable property under the power conferred by statute, to give notice to the owner, or his agent, of property it has determined to increase the tax value of, and to fix a time for a hearing.

6. **Taxation—County Commissioners—Revision—Solvent Credits—Meetings of Board—Interpretation of Statutes.**

> The board of county commissioners having fixed the value for taxation of certain solvent credits of plaintiff, which was not thereafter changed at its meeting as a board of revision, and having raised the tax value of the notes at a regular and not at the meeting prescribed by the statute for revision, in accordance with the sum realized by a sale of land under mortgage securing the notes, without notice to plaintiff, or his agent, their action is void, and the increase in value is a nullity.

HOKE, J., concurring in result; CLARK, C. J., dissenting.

APPEAL from *Ward, J.,* at December Term, 1909, of BEAUFORT, and heard on appeal from a judgment of a justice of the peace.

The action was determined by his Honor upon the following statement of agreed facts:

1. That prior to 1 June, 1907, the plaintiff was the owner of a certain tract of land lying in Beaufort County, North Carolina, and on 11 December, 1906, the said plaintiff sold said tract of land to one N. C. Hughes, Jr., in consideration of the sum of $25,000, and executed a deed to the said Hughes therefor. On 14 December, 1906, the said N. C. Hughes, Jr., executed notes or bonds unto the plaintiff, under seal, aggregating the sum of $25,000, representing the purchase money for said land, and said notes were secured by mortgage upon said land, which said mortgage was duly registered in the register of deeds' office in Beaufort County.

2. In the month of June, 1907, the plaintiff listed his taxes with a list-taker, who had theretofore been duly appointed to

WOLFENDEN *v.* COMMISSIONERS.

receive the tax list for Chocowinity Township, in which township plaintiff resided. That on said list the plaintiff returned the aforesaid notes or bonds of the said N. C. Hughes, Jr., which was secured by mortgage upon the aforesaid tract of land, as being worth $25,000.

3. The said list-taker duly returned his list to the county commissioners of Beaufort County or the register of deeds, and the same were placed with register of deeds of said county of Beaufort, in order that the tax list for the county of Beaufort for the year 1907 might be made up from said tax list. After the said tax list had been returned to the register of deeds of the county of Beaufort, and before the register of deeds had made up the tax books for the year 1907, the plaintiff, who was then a member of the Board of County Commissioners of Beaufort County, instructed the Register of Deeds of Beaufort County, who was the clerk of said board and who made up the tax books for said county, not to value said notes at $25,000, but to leave the matter open for the commissioners as to their value. The county commissioners at a regular meeting ordered that said notes be listed by plaintiff for the year 1907 at $12,500 and the register of deeds of said county, being clerk of said board, entered said notes upon the tax books of the said county of Beaufort for the year 1907 at the valuation of $12,500, being the valuation fixed by the board of county commissioners. On 1 June, 1907, plaintiff was not indebted to any one.

4. The plaintiff paid the taxes assessed against said notes for the year 1907, based on the valuation of $12,500, being the sum at which they were entered upon the tax books of the county of Beaufort by the register of deeds, clerk of the board of county commissioners, under the instruction of the board of county commissioners, instead of at the sum of $25,000, for which the same had been listed with the list-taker.

5. On 1 June, 1908, plaintiff was the owner of the said notes, given by the said N. C. Hughes, Jr., as aforesaid and secured by mortgage, as aforesaid, but had borrowed the sum of $3,000 and had given the said notes as collateral security for said loan of $3,000. He owed no other debts on 1 June, 1908.

6. The plaintiff, during the month of June, 1908, listed the said notes for taxation with the list-taker for Chocowinity Township, who had been duly appointed to take the tax list for said township. In listing said notes for taxation the plaintiff returned the same as being worth the sum of $11,000 and deducted from the said $11,000 the amount of his indebtedness on the said notes, to wit, the amount of $3,000, leaving a net balance of $8,000 as the amount upon which the plaintiff was

to pay taxes for the year 1908 by reason of the ownership of the said notes of the face value of $25,000, subject to a lien of $3,000 for money borrowed.

7. On the second Monday in July, 1908, the members of the board of county commissioners for the county of Beaufort met, according to law, as the board of equalization for the county of Beaufort, for the purpose of equalizing the tax valuation throughout the county of Beaufort.

8. At the session of the said board of equalization the following resolution was passed:

"It has been reported to the county commissioners that Mr. Fred. Wolfenden has in his possession, to wit, solvent credits that he has failed to list for taxation for the year 1908. The said board, upon receiving such information, requests Mr. Wolfenden to list such property, if it has not been listed as the law requires."

The plaintiff was a member of the board of commissioners of Beaufort County, and a member of the board of equalization when said resolution was passed. No other action was taken in regard to said matter at said meeting.

9. On the first Monday in March, 1909, plaintiff, after due advertisement, according to the terms of the said mortgage, sold the lands described in said mortgage, securing the notes, at public auction at the courthouse door in the county of Beaufort, at which sale S. R. Fowle became the last and highest bidder for said land in the sum of $22,500. The plaintiff, as mortgagee, duly executed to the said S. R. Fowle a deed for said land. S. R. Fowle is solvent and was solvent at said time.

10. At the time of the sale of said land, under the said mortgage or deed of trust, as aforesaid, the plaintiff had not then paid the taxes which were assessed against him for the year 1908.

11. On the first Monday in March, 1909, the Board of County Commissioners of Beaufort County, without notice to the plaintiff, raised the valuation of said notes as listed by said Fred. Wolfenden, of which he was the owner on 1 June, 1908, to the sum of $22,500, being the sum of $11,500 in excess of valuation which plaintiff had put upon said notes in 1908, in returning the same to the list-taker, and $14,500 in excess of valuation placed on tax books.

12. The plaintiff, by his attorney, appeared before the Board of County Commissioners of Beaufort County, at the March meeting in 1909, on the day after the valuation was raised, and protested against the action of the board of county commissioners, and upon the request of plaintiff, through his attorney, the Board of County Commissioners of Beaufort

County continued the action on the matter of raising the taxes on the said tax list until the meeting of the said board of county commissioners could be held in April, 1909.

13. At the meeting of the Board of County Commissioners of Beaufort County, and upon the request of plaintiff, the plaintiff and his attorney appeared before the said board, and after inquiry, the said board of commissioners, over the plaintiff's protest, adopted the following resolution:

"It appearing to the satisfaction of the board that Fred. Wolfenden's solvent credits were listed for the year 1908 at $8,000, and it appearing upon further investigation that the actual value was $22,500, it is now, therefore, ordered, adjudged and decreed that he be charged for the difference, which is $14,500; amount of tax $116."

14. On 4 June, 1909, the plaintiff paid to George E. Ricks, Sheriff of Beaufort County and tax collector, the sum of $116, being tax on $14,500, under protest, in writing, that the assessment of said tax was contrary to law. After the first Monday in March, 1909, and before 4 June, 1909, plaintiff had paid to George E. Ricks, sheriff and tax collector of Beaufort County, the taxes which had been assessed against him on the said notes, which had been listed by him for the sum of $8,000, net, that is, $11,000, from which was deducted the $3,000 due and owing plaintiff—that is, the plaintiff paid the taxes assessed on the said $8,000 as the value of said notes.

15. On 10 June, 1909, plaintiff demanded of J. F. Taylor, Treasurer of Beaufort County, a return of said sum of $116; the said amount has not been returned, and defendant still refuses to return the same, except the sum of $24, being the taxes on $3,000, the amount of the indebtedness of plaintiff on 1 June, 1908, and for which the said notes had been duly pledged as aforesaid, as collateral security. This sum of $24 defendant has offered to return and has tendered to the plaintiff, defendant admitting that said sum of $24 should not have been collected by the sheriff, by reason of the fact that plaintiff was entitled to have deducted from the actual value of said notes the amount of his indebtedness, to wit, $3,000. Plaintiff has refused to accept same.

On 4 May, 1909, plaintiff issued a summons against George E. Ricks, Sheriff of Beaufort County, and entered a suit against said Ricks, and said suit proceeded to judgment. A copy of the record in said cause is hereto attached and made a part of this case agreed and is marked "A."

16. It is agreed that if the court is of opinion that the commissioners of Beaufort County, at their meetings in March and April, had no power and authority to increase the value of said

notes as listed, and are bound by the return made by plaintiff
of his taxes to the list-taker in June, 1908, and if the court is
of the opinion that defendant cannot lawfully collect the tax,
upon the differences in value of said notes between the amount
for which said notes were listed and the amount for which said
land was sold in March, 1909, and if the court should be of the
opinion that the plaintiff is not liable for the taxes upon the
additional sum of $11,500 for the year 1908, then it is agreed
that the judgment shall be entered against the defendant for the
said sum of $116 and costs. On the other hand, it is agreed
that if plaintiff cannot maintain this action and is not entitled
to recover of the defendant the amount collected by the sheriff,
as aforesaid, and that plaintiff is liable for the taxes on the
said additional sum of $11,500 for the year 1908, then judg-
ment shall be entered in favor of the defendant.

Upon the agreed facts, his Honor rendered the following
judgment: "This cause coming on to be heard by consent be-
fore his Honor, *George W. Ward,* judge presiding, at the above-
named term of court, on an appeal by the defendant from A.
Mayo, justice of the peace, upon an agreed statement of facts,
submitted as an agreed statement of facts, and the court, after
considering the facts, being of the opinion that the plaintiff is
not entitled to recover, except $24: It is now, upon motion of
W. C. Rodman, attorney for the defendant, ordered, adjudged
and decreed, that the said action be dismissed and that the
plaintiff take nothing by said suit except the $24 heretofore
tendered by the defendant, which by consent it is ordered be
recovered by said defendant. It is further ordered that the
plaintiff pay the costs to be taxed by the clerk."

From this judgment the plaintiff appealed to this Court.

*H. C. Carter* for plaintiff.
*W. C. Rodman* for defendant.

MANNING, J., after stating the facts: Chapter 440, Laws 1909,
designated as the Machinery Act, contains, as similar acts for
many years past have done, a well-considered plan and proce-
dure for determining the value of all property, the subject of
taxation, in the earnest endeavor to make effective the mandate
of sec. 3, Art. V, of the Constitution. The controlling purpose
of the law is to reach all taxable property and to have it placed
upon the list, as near as may be, at its actual value, that it may
not require of the taxpayer any more than his just proportion
of the public burden, but that he shall certainly be required
to "render unto Cæsar the things that are Cæsar's."

The particular section of the above act under which the board

of commissioners acted in the present case is section 68. The corresponding section of the act of 1881, sec. 18, ch. 117, being in language almost identical with this, was construed by this Court in *Commissioners v. R. R.*, 86 N. C., 542, in which *Smith, C. J.*, delivering the opinion of this Court, said: "The notice required before the meeting in August (now, by section 68, to be held in July) is general, and has reference to a general revision of the lists of the whole county, with a view to an equal and uniform assessment among the several townships, and it is to give opportunity to all who may be dissatisfied with the valuation of their property to make complaint and have it corrected. This sitting must be protracted until the work is completed. But authority is expressly conferred 'to raise the valuation upon such property as they deem unreasonably low'; and of this proposed increase special notice must be given to the owner or agent. As the commissioners do not meet after their lists are delivered to their clerk (section 16) before the second Monday in August, and then can only make the examination and ascertain that any property has been valued unreasonably low, it is obvious that, in order to the giving notice, they must do so at a future day, when the owner can be present and can be heard before the matter can be determined. Nor can any reason be suggested why it should be earlier than the regular meeting in September. The commissioners have complied with the requirements of the act." In that case the commissioners, at their meeting in August—the time then fixed by the statute—determined to increase the valuation of defendant's roadbed from $3,000 to $6,000 per mile, and ordered that notice issue to the company to appear at their next meeting on the first Monday in September, and show cause why the valuation should not be fixed at the proposed increased amount.

It will be observed that the commissioners in that case began the procedure to increase the valuation at the meeting prescribed by law for that purpose, and followed up the matter so begun, without break or discontinuance, in the prescribed procedure to the final act. The only action taken by the commissioners, in the present case, at the meeting on the second Monday in July, was the adoption of the following resolution: "It has been reported to the county commissioners that Mr. Fred. Wolfenden has in his possession, to wit, solvent credits that he has failed to list for taxation for the year 1908. The said board, upon receiving such information, requests Mr. Wolfenden to list such property, if it has not been listed, as the law requires." If the commissioners were correctly informed that

the plaintiff had omitted to list any chose in action, their power was ample under section 72 of the act to secure the placing of such omitted property upon the tax list.

In both cases—that of undervaluation, under section 68, and of omitted property, under section 72—the commissioners are vested with ample powers of inquiry by examining witnesses, calling for papers and calling upon the taxpayer himself, and the machinery for obtaining information to increase the value of such property as they shall deem to be listed unreasonably low is ample. But the subsequent action of the commissioners in this case conclusively shows that it was not omitted property, but undervalued property, they were in search of. Property willfully omitted from the tax books or willfully concealed in order to evade its fair and just contribution to the public expense has small claim to the sympathy of the Legislature or judicial departments of the Government; but where the question at difference is one of valuation—a matter generally difficult of exact ascertainment and in ascertaining which there is generally place for honest differences of opinion—we are of the opinion that the law in providing the procedure to determine this has fixed, both by its letter and spirit, a defined time at which this shall be finally determined for each fiscal year. This would seem to be clear from this language of section 68, to wit: "and it shall be the duty of the register of deeds, without additional compensation, to complete the list by computing the tax payable to (by) each person, affixing the same opposite his name"; and "The board of commissioners shall sit for one day at least, and, when necessary, shall sit until the revision is complete, etc." It is evident that the time of this meeting was changed from August (under the older statutes) to July, to enable the commissioners to complete the work of revision and give time to the register of deeds to make up the tax books and compute the taxes by the first Monday of September, when the tax books are directed to be delivered to the sheriff or tax collector, with order for collection of taxes.

Section 68 does not create the board of commissioners technically a board of equalization; this board is created by section 18 of the act and meets only once in four years—the year in which all real estate and personal property is valued by the board of assessors; but the duty and power of revision is specifically imposed upon the board of commissioners by section 68, and the time definitely fixed when it is to begin the performance of this duty. If the board of commissioners is invested with the general power of revision, and can exercise it at any meeting in the year, why has the law fixed a definite time for it to meet to perform this particular duty? While it

is important that the State and its several subdivisions invested with the taxing power should receive from every species of taxable property its fair and just proportion to the public expense, it is equally important that the taxpayer should know and have definitely settled, at some prescribed time in each year, how much his contribution in taxes to this public expense shall. be.   Especially is this important in view of the provision of the law that the tax constitutes a lien upon real estate from 1 June, and the tax lists, when delivered to the sheriff or tax collector, constitute a judgment and execution against personal property and require but the levy by the officer to completely subject it to the payment of the tax obligation.   As was said by this Court in *Wilson v. Green,* 135 N. C., 343, at p. 348: "A thorough and complete system of procedure is established, by virtue of which the taxpayer can be heard upon all questions concerning the valuation of his property for taxation, and be restored to any and all rights he may have lost by any irregular or fraudulent action of the assessors."   While in that case the Court was discussing the procedure prescribed by statute for use in that year, when there was to be a revaluation of all property, yet the statement of the Court above quoted is equally applicable to the other years.

To hold that the Board of Commissioners is invested with the power of revision, to be' exercised at any meeting, would lead to great confusion and uncertainty and would subject the taxpayer, who owned the land or personal property, to the risk of having the value of his property increased for taxation at any time during the year, when by a sale of it it. had brought a higher price than the value at which it was.listed.   The same result would follow to that taxpayer whose credits depended for their value entirely upon the property pledged for their payment.   It was not, in our opinion, contemplated by the statute under consideration that this doubt, confusion and uncertainty should exist.   We have examined similar statutes of other States and the decisions of their courts construing them, and the construction we have placed upon our statute is in harmony with the construction given by other courts to their statutes.   *Peterson v. Osage City Natl. Bank,* 8 Kan. App., 508; *Sumner v. Colfax Co.,* 14 Neb., 524; *Wiley v. Flournoy,* 30 Ark., 609; *Yocum v. Brazil First Natl. Bank,* 144 Ind., 272; *Phillips v. New Buffalo,* 64. Mich., 683; *Auditor Gaul v. Chandler,* 108 Mich., 569; *Matador Land Co. v. Carter Co.,* 72 Pac. Rep., 662; *Fowler v. Russell,* 45 Kan., 425; *St. Joseph Lead Co. v. Simms,* 108 Mo., 222.

Concisely stated, then, in our opinion, the power of revision conferred upon the board of commissioners by section 68 is a

special power, not one of its general and ordinary powers enu-
merated in section 1318, Revisal of 1905; that the board must
meet on the second Monday of July to begin the exercise of
the particular power of revision; that it must continue. its
session until the work of revision is complete; that when it
determines to increase the value of property already listed, it
must give notice to the owner or his agent, fixing a time for
its hearing; that it may continue its session, by adjournment,
as a board of revision until such time, and may further con-
tinue its session when necessary; that ample machinery and
power is conferred upon it to obtain information to reach a
just conclusion; that when it completes the work of revision
thus begun, its duties and power as a revising board cease and
determine, and it cannot resume such duties until the time
appointed by statute in the next year; that in the fourth year,
the year of revaluation of property, the powers and duties of
equalization and revision are conferred by section 18 upon the
board of equalization, and not upon the board of commissioners,
as a distinct corporate body.

Applied to the present case, the plaintiff listed solvent credits,
which consisted entirely of the purchase-money notes of the
land; that exact information was given to the board the preced-
ing year and it valued them at $12,500, the tax value of the
land; that plaintiff valued the same notes the next year at
$11,000; that this valuation was not changed by the board of
commissioners sitting as a board of revision; that the land was
sold on the first Monday of March, 1909, and brought $22,500,
and the proceeds were applied to plaintiff's notes; that the
commissioners then increased the tax value of plaintiff's solvent
credits. We think this action of the board unwarranted by
law. We do not wish to be understood as passing upon the
power of the board of commissioners in cases of fraudulent
undervaluation of property. That question is not presented by
or involved in the decision of this case.

Upon the statement of agreed facts, his Honor should, as we
think, have rendered judgment for the plaintiff for the sum of
$116—the tax collected on the increased amount of valuation—
and in declining so to do there was

Error.

HOKE, J., concurring in result: I concur in the disposition
made of this case, for the reason that it appears that the amount
of the notes, the consideration, the land held as security there-
for and all the data affording information as to the true value
of the notes in question were well known to the commissioners
at the time of their July meeting and had been for more than a

year, and where this is true the statute contemplates and provides that any increase in such valuation shall be made or proceedings looking to that end should be formally instituted at the July meeting referred to, and regularly pursued; and that an increase at any subsequent time arising from the fact, and that alone, that a subsequent sale of the land has disclosed that the valuation appearing on the tax list may have been too low, is without warrant of law. Where, as stated, all the data relevant to the inquiry are known to the authorities before the regular meeting provided for the purpose, a taxpayer has a right to rely on the valuation fixed at that time, and to provide for paying his taxes for the year on that basis. He should not be subjected to the uncertainties incident to a subsequent raise of the valuation in the discretion of the commissioners, where, as stated, all the pertinent facts were fully known to them at the regular meeting specially provided by law for the purpose.

CLARK, C. J., *dissenting:* It appears from the facts agreed that in June, 1907, the plaintiff was owner of $25,000 in first-mortgage bonds secured on a tract of land which he had sold, and that he listed them for taxation at that sum. In February, 1908, on his application, the board of commissioners, of which the plaintiff was at that time a member, reduced the valuation to $12,500. In June, 1908, the plaintiff on his own motion listed the bonds for taxation in the sum of $11,000, deducting therefrom $3,000 for indebtedness due by him. At their meeting in July the board passed a resolution as follows: "It has been reported to the county commissioners that Mr. Fred. Wolfenden has in his possession solvent credits that he has failed to list for taxation for the year 1908. The said board upon receiving such information, requests Mr. Wolfenden to list such property, if it has not been listed, as the law requires."

The board then and there took notice that the property had not all been listed or had been listed for only a part of its value. It is not material whether the property had been listed at an undervaluation or part of the bonds had not been listed at all. The effect is the same. The object of the statute is to require equality, to the end that all property shall bear its just share of the public burdens. But in fact there was here, according to language of above resolution, a failure to list, an omission to place $14,000 of these bonds upon the tax list, for he only listed $11,000, though he held $25,000, of the bonds. The plaintiff took no notice of the request of the board of commissioners to "list such property."

In March, 1909, the property was sold under the mortgage, and brought $22,500. Thereupon the board, taking notice that the plaintiff had not complied with their request, themselves raised the valuation to $22,500. The plaintiff appeared before the board and protested, whereupon four weeks' notice was given him, and he was heard at the April meeting, when the valuation was fixed at $22,500. There is no suggestion in the record that this is more than the true value.

The plaintiff complains, not that the property was not worth $22,500, but because the board raised the valuation, or listed the omitted bonds, after the July meeting. He contends that to make a change after that meeting will cause confusion and instability in the tax list. He listed these bonds at $25,000 in June, 1907, and persuaded the board to reduce their valuation for taxation to $12,500 in February, 1908. It did not occur to him that *this* change would produce confusion and instability in the tax list. In June, 1908, he either listed them by undervaluation, or by omission of some of them, at $11,000, and it could not produce confusion to raise them to their true valuation in March, 1909, when it had not done so to reduce their valuation in February, 1908. The plaintiff's valuation of the property was $25,000 when he sold it and took the mortgage bonds. At sale under the mortgage, the property brought $22,500; so it follows that for the year 1907 the plaintiff had at least $10,000 of bonds which were exempted from taxation, and now he is claiming in this action that $11,500 should be exempt from any share of taxation for 1908.

The plaintiff's sole ground is that the board could only correct the tax list at the July meeting. He did not act upon that theory when he caused the board to make a change of $12,500 in his favor in February, 1908. Besides, in 1908, the commissioners did take action at the July meeting by requesting the plaintiff to correct his valuation by either raising it or adding the omitted bonds, whichever it may be considered.

It is physically impossible for a board of county commissioners to discover and correct all the omissions and undervaluations upon the tax list at their meeting in July. The object of the statute is that all property which has been omitted or undervalued shall be put upon the tax list whenever discovered. That duty is as imperative when brought to the attention of the board at any subsequent meeting as at the July meeting. All that the delinquent taxpayer is entitled to is that he shall have notice and an opportunity to be heard, and these this plaintiff has had.

It is true that the tax is a lien upon real property, and it may be that, if the land is sold before the correction of the tax

valuation, a purchaser without notice would not be liable for the added taxation. But there is no such question here. There can be no inconvenience to the public, nor any injustice to the plaintiff, in requiring him at the April meeting to pay taxes upon the true value of the property after due notice and hearing and proof that the property was worth $22,500, especially when he had been requested at the July meeting to list the property at its correct value. And more especially, since at his instance in February, 1908, the board had corrected the tax valuation of these bonds for 1907 by reducing them to about half of their true value, whereby he escaped taxation on $11,000 or $12,000 for 1907.

It has always been right and just that all property should bear its fair share of public burdens. With the increase in the objects and functions of government and the increase in revenue thereby necessitated, it has become vitally important that all property shall be listed at its true value. We know that the wealth of the State does not always bear its *pro rata* part of taxation. This throws the burden of taxation with crushing force upon those of moderate or humble means whose little belongings are visible and tangible and cannot escape the hand of the tax collector, while intangible and invisible property, such as bonds, notes, shares, stocks, and similar invisible or intangible property, are often either omitted wholly from the tax list by omission to list them, or partly so by undervaluation. The Legislature in passing this statute to correct this great and growing evil certainly never intended that the board of county commissioners, with many thousands of names before them on the new tax list at their July meeting, should, then and there, correct all omissions and undervaluations of property, and that if an evading taxpayer should escape their notice at that meeting the board should be powerless to make the proper corrections when omissions or undervaluations are brought to their attention at any subsequent day.

In Switzerland, and some other countries, the statute provides that all estates of deceased persons go into the hands of a public administrator, who shall compare the value of the estate with the tax list, and, if there is any discrepancy, he shall go back several years, estimating as fairly as he can what ought to have been on the tax list for those years, and shall take out of the estate the taxes on omitted or undervalued property. In England the revenue act just approved at the polls requires that all increase in the value of real property since the last valuation shall pay one-fifth of such increase into the public treasury. Our statute has not gone to such an extent, but it is evident that the intention of our Legislature was that

all property should be valued and taxed on an equality, and there was no intention that if an omission or an undervaluation should escape the attention of the board of commissioners at their meeting in July, that the inequality should not be corrected at any subsequent day during the year, even when brought glaringly to their attention by a public sale at which the property brought, as in this case, more than double the value at which the property was listed. This board of commissioners and the judge below should be commended, and not reversed, in seeking to subject such property to its fair and equable share of taxation.

The board of commissioners, however, in this case, did take action at their July meeting. They requested the plaintiff to list this very property "as the law requires." They doubtless thought he would do so, without being compelled by further action on their part. On finding, later, that he had not complied with their request, it was their duty to see that the property was properly listed, after giving him due notice and a hearing, as they did. They could not know till after the July meeting that he had failed to comply with the notice and request which they gave him at that meeting.

It is an inherent power of the State at any and all times to collect the taxes due it by its citizens. The State may go back any number of years to collect taxes upon property which has not borne its share. *Wilmington v. Cronly,* 122 N. C., 383, and cases there cited. Sections 68 and 18, ch. 440, Laws 1909 (the Machinery Act), are directory, and not mandatory, in that the powers therein given can be exercised at any time.

Section 68 says: "They shall have power, after notifying the owner or agent, to raise the valuation of such property as they shall deem unreasonably low." This part of section 68 does not confine the board to the second Monday of July, even when construed with the remainder of said section, but leaves the time open, requiring only that notice be given to the taxpayer so that he may appear and be heard. In the present case all this was done, and it is certain from the record, and is not denied, that the valuation placed upon the property listed by the plaintiff was unreasonably low. This fact, as already stated, had been called to plaintiff's attention by the board in July, and it was placed beyond question by the property having brought $22,500 at public sale.

Section 73 of the Machinery Act of 1909 gave the board of commissioners power, in any event, to put upon the tax list the unlisted valuation of the bonds in question. It can make no difference whether the shortage in the amount was caused

by the omission to list part of the bonds or by the omission to place full and just value upon all of them. The same power is also given by section 72.

The object of the Legislature was to secure the placing of omitted or undervalued property upon the tax list. There could be no surer way to defeat this purpose than for the act to require that to be done on one certain day, and that if the board is not then informed, or fails to act, that the tax dodger who escapes detection on that day can snap his fingers at the board all the other 364 days of the year. The Legislature intended no such futility. There are no words restricting the board to that day. The duty is a general and a continuing one. The essential thing is the duty, not the date.

The board of commissioners after notice and hearing raised the valuation to $22,500. The plaintiff does not even suggest that this is too much, and could not, as the property when sold under his mortgage brought that figure. He paid the $116 taxes due on the valuation which he had not listed. He owed that sum to his State and county.

His Honor properly held, as I think, that the plaintiff was not entitled to recover it back.